■ TIMOTHY WALLS et al., Respondents, v TURNER CONSTRUCTION COMPANY, Appellant-Respondent, and JORDAN CONSTRUCTION COMPANY, Respondent-Appellant. [781 NYS2d 13]—

Order, Supreme Court, New York County (Walter Tolub, J.), entered on or about October 8, 2003, which, to the extent appealed from, denied summary judgment to defendant Turner Construction Company for dismissal of plaintiffs' claims under Labor Law § 240 (1) and § 241 (6), granted summary judgment to plaintiffs on their section 240 (1) claim against Turner, denied the motion by defendant Jordan Construction Company for leave to amend its answer to assert the recalcitrant worker defense, denied summary judgment to Jordan for dismissal of Turner's cross claims for contractual indemnification and contribution and for failure to procure insurance, and granted summary judgment to Turner on that cross claim, modified, on the law, Turner's cross claim with respect to Jordan's failure to obtain insurance dismissed, and otherwise affirmed, without costs.

Turner, the construction manager, was the owner's statutory agent for purposes of liability under Labor Law § 240 (1), since it had the contractual obligation to monitor Jordan's window replacement work (*see Rizzo v Hellman Elec. Corp.*, 281 AD2d 258, 259 [2001]), as well as the duty and controlling authority to halt any work that failed to comply with the contracts or appropriate statutory or regulatory safety standards (*see e.g.* agree-

ment art 2, subpars 2.6.14, 2.6.15, 2.6.18, 2.6.24; *cf. Serpe v Eyris Prods.*, 243 AD2d 375, 380 [1997]).

Jordan's recalcitrant worker defense was without merit, absent any evidence that plaintiff had disobeyed any immediate specific instructions to use an actually available safety device or to avoid using a particular unsafe device (*Balthazar v Full Circle Constr. Corp.*, 268 AD2d 96 [2000]). Jordan did, however, present evidence in the form of a certificate demonstrating that it had, in fact, complied with its contractual obligation to procure insurance on Turner's behalf. Indeed, the reason for the insurer's subsequent disclaimer of coverage was not that Turner had not been named as an additional insured, but that Turner had violated the policy conditions in failing to provide prompt written notice of plaintiffs' claims.

We have considered the parties' remaining arguments for affirmative relief and find them unavailing. Concur—Ellerin, Lerner and Gonzalez, JJ.

Andrias, J.P., dissents in part in a memorandum as follows: Because the controlling agreements clearly establish that Turner, as the construction manager, was not the owner's statutory agent for purposes of liability under Labor Law § 240 (1) and § 241 (6), I would also dismiss plaintiffs' claims under those sections.

It is undisputed that there was no general contractor on this window replacement project and that Turner acted only as the construction manager. Pursuant to its "Agreement for Construction Management Consulting Services" with the Massapequa Board of Education, Turner was to "act as the agent of the Owner in providing and performing all of the services to be provided or performed by the Construction Manager." However, contrary to the majority's and the motion court's findings, it did not have "the authority to stop work that was not proceeding in compliance with contracts, statutes or regulations."

Subparagraph 2.6.2.2 of the agreement specifically requires Turner, if it discovers work being performed contrary to a trade contract, etc., to promptly notify the architect in writing, with a copy to the owner, and to make recommendations to the architect regarding, if necessary, correction of such work. "If and when a Trade Contractor is directed by the Architect or the Owner to stop or correct work, the Construction Manager shall monitor such Trade contractor's compliance . . . ." Clearly, by the terms of its agreement with the owner, which are determinative (*see Buccini v 1568 Broadway Assoc.*, 250 AD2d 466, 469 [1998]), Turner did not have the authority to stop the window replacement work being done by plaintiff, a special employee of Jordan.

The general conditions of Jordan's agreement with the school board for the window replacement work further limit Turner's responsibility. Subparagraph 2.1.12 of those conditions provides: "The Owner's representative shall be involved in project coordination; however, it shall not be the responsibility of the Owner's Representative to see to the provision of or approve safety precautions or any constructions, means, methods, techniques, sequences or procedures. No action taken on the part of the Owner's Representative shall rise to a duty of responsibility of the Owner's Representative to the Contractor [Jordan], subcontractor, material or equipment suppliers, their agents or employees or other persons performing portions of the work."

This Court has held in *Buccini v 1568 Broadway Assoc.* (250 AD2d 466, 468-469 [1998]): "A construction manager whose 'duties [are] limited to observing the work and reporting to the contractor safety violations by the employees' does not thereby become liable to the contractor's employee when the latter is injured by a dangerous condition arising from the contractor's negligent methods (*Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877). The construction manager's authority to stop the contractor's work, if the manager notices a safety violation, does not give the manager a duty to protect the contractor's employees (*Fox v Jenny Eng'g Corp.*, 122 AD2d 532, 533, *affd* 70 NY2d 761). The general duty to supervise the work and ensure compliance with safety regulations does not amount to supervision and control of the work site such that the supervisory entity would be liable for the negligence of the contractor who performs the day-to-day operations (*D'Antuono v Goodyear Tire & Rubber Co. Chem. Div.*, 231 AD2d 955)."

*Rizzo v Hellman Elec. Corp.* (281 AD2d 258 [2001]), relied upon by the majority, is readily distinguishable on its facts inasmuch as the two defendants found to be statutory "agents" of the general contractor for purposes of Labor Law § 240 (1) or § 241 (6) were both subcontractors, who, in turn, subcontracted the work plaintiff was performing at the time of his injury to his employer. As such, this Court held, "each retained non-delegable authority to supervise and control the work being performed at the time of the injury (*Russin v Picciano & Son*, 54 NY2d 311)." (*Id.* at 259.) Authority to supervise and control such work is key. "Only upon obtaining the authority to supervise and control [the work] does the third party [there a prime contractor, here a construction supervisor] fall within the class of those having nondelegable liability as an 'agent' under sections 240 and 241" (*Russin v Picciano & Son, supra* at 318).

Thus, even given the deposition testimony of Turner's superintendent at the site that "[i]f there was something that was improper that was being done on the job site, then we were able to stop it . . . ," Turner did not have the requisite "supervision and control of the work site" to impose a statutory nondelegable duty to protect Jordan's employees.