■ JAMES SHERIDAN et al., Respondents, v BEAVER TOWER, INC., et al., Appellants-Respondents, and APOLLON · WATERPROOFING AND RESTORATION CORP., Respondent. BEAVER TOWER, INC., et al., Third-Party Plaintiffs-Appellants-Respondents, v YORK SCAFFOLD EQUIPMENT CORP., Third-Party Defendant-Respondent-Appellant, and APOLLON WATERPROOFING AND RESTORATION CORP., Third-Party Defendant-Respondent. [644 NYS2d 739] —Order of the Supreme Court, New York County (Richard B. Lowe, III, J.), entered on or about October 20, 1995, which (1) denied the motion of defendants Beaver Tower, Inc. and Lawrence-Picasso, Inc. for summary judgment dismissing the complaint; (2) granted plaintiffs' motion for summary judgment against said defendants on plaintiffs' claim predicated on Labor Law § 240 (1); and (3) severed that claim and ordered a trial of damages, unanimously modified, on the law, to the extent of granting defendants' motion to dismiss the claim asserted against them pursuant to Labor Law § 200 (1) and, except as so modified, affirmed, without costs. Order of the same court and Justice, entered on or about February 7, 1996 which, *inter alia*, denied defendants' motion for summary judgment on their indemnification claim against third-party defendant York Scaffold Equipment Corp., unanimously modified, on the law, to the extent of granting defendants' motion and, except as so modified, affirmed, without costs.

Plaintiff James Sheridan was injured while an employee of third-party defendant York Scaffold Equipment Corp. while engaged in dismantling a 16-foot-high sidewalk bridge. The scaffolding had been erected at an apartment building owned by defendants Beaver Tower, Inc. and Lawrence-Picasso, Inc. Plaintiff was standing in the cargo area of a flat-bed truck receiving 4-by-8 panels of plywood being handed down to him by another York employee standing atop the bridge. The panels each had a two-inch by three-inch strip of wood ("bracing board") nailed to them to provide a handle by which they could

be lowered to the level of the truck bed, approximately five feet off the ground. A panel separated from the bracing board by which it was being held (because the nails pulled out of the panel), striking Mr. Sheridan in the face and causing injury to his forehead, nose and mouth.

The complaint alleges violations of Labor Law § 200 (1), § 240 (1) and § 241 (6). The owners commenced a third-party action for indemnification against York on the ground that they exercised no direction or supervision of the dismantling operation and that plaintiff's injury was due entirely to York's unsafe labor practice.

The purpose of Labor Law § 240 (1) is "to provide 'exceptional protection' for workers against the 'special hazards' that arise when the work site either is itself elevated or is positioned below the level where 'materials or load [are] hoisted or secured' " (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500-501, quoting *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514). The hazards to which statutory protection extends "are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured (*see, DeHaen v Rockwood Sprinkler Co.*, 258 NY 350). In other words, Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person*" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, *supra*, at 501 [emphasis in original]).

The use of a bracing board rather than a suitable hoist was the proximate cause of the injury sustained by James Sheridan. Thus, the accident is clearly covered by the provisions of the statute, and summary judgment was properly granted to plaintiffs.

Labor Law § 241 (6) requires that the owner and contractor obey safety rules promulgated by the commissioner. While only three applicable rules are mentioned in plaintiffs' brief, their bill of particulars lists 52 such regulations, including the failure to supply a hard hat and goggles. Whether, as both the owners and York dispute, these devices would have materially reduced the extent of Mr. Sheridan's injuries is a question of fact to be determined at trial.

Plaintiffs do not dispute the owners' contention that the claim predicated on violation of Labor Law § 200 should have been dismissed. It is well settled that this provision is a codification of the common-law duty to maintain a safe work site,

which is imposed on the party having " 'the authority to control the activity bringing about the injury' (*Russin v Picciano & Son*, 54 NY2d 311, 317). Where the alleged defect or dangerous condition arises from the contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner under the common law or under Labor Law § 200 (*Lombardi v Stout*, 80 NY2d 290, 295)" (*Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877).

York's contention that the owners' superintendent maintained an office in the apartment building is insufficient to raise to a triable issue concerning supervision of the job site (*Pacheco v South Bronx Mental Health Council*, 179 AD2d 550, 551, *lv denied* 80 NY2d 754; *Elezaj v Carlin Constr. Co.*, 225 AD2d 441, 443). In the absence of supervisory control over the work, the owners' liability to plaintiffs is purely vicarious (Labor Law § 240 [1]) and they are entitled to indemnification by the tortfeasor (*Kelly v Diesel Constr. Div.*, 35 NY2d 1, 6; *Guillory v Nautilus Real Estate*, 208 AD2d 336, 339, *lv denied* 86 NY2d 881; *Brezinski v Olympia & York Water St. Co.*, 218 AD2d 633). Concur—Murphy, P. J., Wallach, Rubin, Williams and Mazzarelli, JJ.