■ ANTHONY N. SERPE, Respondent, v EYRIS PRODUCTIONS, INC., Appellant and Third-Party Plaintiff-Appellant. ROTH PAINTING CO., INC., Third-Party Defendant-Respondent. [663 NYS2d 542] —Judgment, Supreme Court, New York County (Norman Mordue, J.), entered March 27, 1996, which, after a jury trial, and upon the court's directed verdict against Eyris on the Labor Law § 240 (1) claim, awarded plaintiff $356,588.20 and dismissed the third-party complaint, affirmed, with costs.

Defendant Eyris Productions, Inc. (Eyris) was hired as general contractor for a renovation project at an apartment building located at 140 Thompson Street in Manhattan. Third-party defendant Roth Painting Co., Inc. (Roth) was retained by Eyris as the painting subcontractor, and the plaintiff was employed by Roth as a painter. The project involved renovating two apartments in the building into a duplex. The apartments were on the first and second floors, one immediately above the other, and they were to be joined by a spiral staircase. On June 5, 1987, after working at this location for 2½ weeks, plaintiff was assigned to do touch up painting on the ceiling using an extension pole. While plaintiff was performing this task he stepped back into a large hole in the floor, where the spiral staircase

was being built, and fell onto the staircase. Plaintiff tumbled down the entire staircase, a distance of approximately 10 feet.

At the time of the accident, the staircase was only partially completed. The staircase handrail and most of the steps had been finished, but the top two steps from the second floor were not mounted, leaving a 1 to 1½ foot drop to the completed stairs. The evidence at trial established that there was no planking over the hole covering the staircase at the time, nor were there any guardrails or ropes surrounding the hole. On prior occasions, the contractor, or the plaintiff himself, had installed planks from the construction site to cover the hole. Also, Eyris's president testified at his deposition, which testimony was read at the trial, that a rope had previously been installed around the hole.

Plaintiff commenced this action in September 1988, alleging violations of Labor Law §§ 240 and 241. Eyris brought a third-party action against Roth alleging violations of sections 240, 241 (6), 241-a and 200 of the Labor Law. The case proceeded to trial, and at the close of the testimony concerning the issue of liability, the IAS Court directed a verdict in favor of plaintiff as against Eyris, finding, as a matter of law, that Eyris had violated Labor Law § 240 (1). The court rejected Eyris's argument that Labor Law § 241-a, rather than section 240 (1), applied, and held that the sections were not mutually exclusive. Subsequently, the court dismissed the third-party action against Roth, finding insufficient evidence of Roth's control and supervision over the painting detail. After the damages phase of the trial, the jury returned a verdict in favor of the plaintiff for $350,000.

On appeal, Eyris argues that the IAS Court erred in directing a liability verdict on plaintiff's Labor Law § 240 (1) cause of action. We disagree. Labor Law § 240 (1) provides: "All contractors and owners and their agents * * * in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." A contractor's or owner's failure to fulfill its statutory obligation to furnish adequate safety devices will result in absolute liability where that failure is the proximate cause of the plaintiff's injuries (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513; *Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 519).

The evidence at trial established that plaintiff was painting the ceiling of the renovated second floor when he fell into a large, unprotected hole. Further, on previous occasions, ropes or planks had been utilized to prevent workers from falling through the hole down to the floor below. For some unknown reason, those precautions were not taken on the date of plaintiff's accident. Thus, no safety devices were "placed and operated as to give proper protection" to the plaintiff (Labor Law § 240 [1]).

Since "Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [emphasis omitted]), the statute is directly applicable here. Plaintiff faced precisely the same type of risk described in *Rocovich (supra,* at 514), "where protective devices are called for * * * because of a difference between the elevation level of the required work and a lower level."

Eyris makes the argument, echoed by the dissent, that Labor Law § 240 (1) is inapplicable because the work being performed by the plaintiff in this case did not involve risks related to differences in elevation (*see, Groves v Land's End Hous. Co.*, 80 NY2d 978, 980). We reject this argument, and several of the propositions advanced by the dissent in reaching its conclusion. For example, the dissent asserts that "there is no proof that [plaintiff's] presence in that particular location was required by the task being done." The dissent further states that "there is no evidence that the plaintiff's work required the use of scaffolding, ladders" or any of the other safety devices enumerated in the statute, and that those devices "would not have prevented the inadvertent misstep [by the plaintiff]." On the contrary, it is self-evident to us that plaintiff's presence was required at the very location he was supposed to be working, and that the work entailed a significant, elevation-related risk that could have been obviated by defendant's compliance with its statutory obligations.

The dissent's claim that the second floor upon which plaintiff was working cannot constitute an elevated worksite under Labor Law § 240 (1) is not supportable. Numerous appellate courts have found section 240 (1) applicable where workers have been injured due to falls from elevated levels of buildings under construction (*see, Felker v Corning Inc.*, 90 NY2d 219; *Carpio v Tishman Constr. Corp.*, 240 AD2d 234; *Fuller v Catal-*

*famo,* 223 AD2d 850; *Clark v Fox Meadow Bldrs.,* 214 AD2d 882, 883; *Orcutt v American Linen Supply Co.,* 212 AD2d 979; *Flansburg v Merritt Meridian Constr. Corp.,* 191 AD2d 756; *Serino v Miller Brewing Co.,* 167 AD2d 917 [appeal No. 2], *lv dismissed* 78 NY2d 1008).

For example, in *Felker v Corning Inc. (supra),* the plaintiff used a ladder to reach over an alcove wall to paint the area over the alcove. In doing so, plaintiff fell over the alcove wall and through a suspended ceiling to the floor below. The Court of Appeals found "two distinct elevation-related risks" associated with plaintiff's work *(supra,* at 224). The first was plaintiff's utilization of the ladder to elevate himself. The Court went on to state (at 224): "More importantly, a second risk was created here by plaintiff's need to reach over the eight-foot alcove wall and work over an elevated, open area. It is the contractor's complete failure to provide any safety device to plaintiff to protect him from this second risk of falling over the alcove wall and through the suspended ceiling to the floor below that leads to liability under Labor Law § 240 (1) in this case." *(See also, Barnaby v A. & C. Props.,* 188 AD2d 958.)

Similarly, in *Fuller,* the plaintiff climbed an interior wall located near an open stairwell to put the top plate on the second story of a building. The interior wall "whipped out" and plaintiff fell through the stairway opening to the basement floor. Acknowledging that some contradictory evidence existed that plaintiff had not climbed the interior wall at the time of the accident, the Appellate Division, Third Department ruled that, irrespective of whether he had done so, plaintiff was subjected to elevation-related risk "since he fell from the second story of a home under construction" *(supra,* at 851).

Even closer to the facts of this case, the plaintiffs in both *Carpio v Tishman (supra)* and *Serino v Miller Brewing Co. (supra)* were each working on an elevated floor of a building under construction, when each accidentally stepped in a hole and fell to a lower level. In each case it was held that Labor Law § 240 (1) was violated because no safety devices were provided to prevent the worker's fall from an elevated worksite. Although the dissent does not view the floor of an uncompleted building as an elevated worksite, the above cases clearly refute that notion. One might pose the question to the dissent that if this hole were on the 20th floor, and the plaintiff fell down 20 stories through the open stairwell shaft, would there be any doubt that plaintiff's work constituted an elevation-related risk? We think not.

Eyris further asserts, and the dissent agrees, that Labor

Law § 241-a, rather than section 240 (1), controls in this instance. Indeed, Eryis goes even further by declaring that these two sections are mutually exclusive, and that if section 240 (1) were to apply in these circumstances, section 241-a would be rendered meaningless. Labor Law § 241-a provides: "Any men working in or at elevator shaftways, hatchways and stairwells of buildings in course of construction or demolition shall be protected by sound planking at least two inches thick laid across the opening at levels not more than two stories above and not more than one story below such men, or by other means specified in the rules of the board."

We find that both sections 240 (1) and 241-a are applicable. The cases cited by Eyris and the dissent are distinguishable. In *Spinelli v St. John Nepomucene R. C. Church* (140 AD2d 427) and *Marcellino v Nigro* (149 AD2d 775), the plaintiffs' sole claim was the alleged failure to provide planking over an open stairwell. Here, plaintiff in no way limited his allegations in his pleadings to the failure to provide planking. Other than the above two cases, which we find inapplicable, we are unaware of any authority holding these separate provisions of the Labor Law to be mutually exclusive.

While the dissent insists that only planking, a safety device not enumerated in the statute, would have prevented plaintiff's fall, the contrary is readily apparent. The use of a brace or rope, both enumerated devices, would have adequately served to protect plaintiff under these circumstances. There is no authority for Eyris's and the dissent's suggestion that the plaintiff must plead the exact device that the defendant should have provided. We read the statutory phrase "and other devices" to mean exactly what it says—*any* device that would protect a worker from an elevation-related risk covered by the statute.* Thus, in directing a verdict for the plaintiff on the Labor Law § 240 (1) claim, the IAS Court properly determined that Eyris's failure to provide *any* safety devices was the proximate cause of plaintiff's injuries (*see, Felker v Corning Inc., supra*).

The IAS Court's dismissal of the third-party complaint upon the completion of the evidence was also proper. "[W]hile under Labor Law §§ 240 and 241 owners and general contractors are generally absolutely liable for statutory violations [citations omitted], other parties may be liable under those statutes only if they are acting as the 'agents' of the owner or general

---

* In any event, plaintiff's failure to plead a specific safety device was remedied by the trial evidence establishing that a rope was used to guard the unprotected hole on prior occasions.

contractor by virtue of the fact that they had been given the authority to supervise and *control* the work being performed at the time of the injury (*Russin v Picciano & Son*, [54 NY2d 311], at 318)." (*Walsh v Sweet Assocs.*, 172 AD2d 111, 113, *lv denied* 79 NY2d 755 [emphasis in original].) "[T]he determinative factor on the issue of control is not whether a subcontractor furnishes equipment but whether it has control of the work being done and the authority to insist that proper safety practices be followed" (*Iveson v Sweet Assocs.*, 203 AD2d 741, 742; *see also, Walsh v Sweet Assocs., supra,* at 114).

Here, Eyris failed to establish that the third-party defendant Roth had the requisite authority to control and supervise the work so as to hold it liable as a statutory "agent." While there was a delegation of the painting work to Roth, there is no evidence Roth controlled the work area or had authority to insist that safety precautions be taken with regard to plaintiff's work. Apparently, both Eyris and Roth employees were involved in placing and removing planks from the hole above the staircase. On this record, we find the evidence insufficient to hold Roth liable as a statutory agent (*see, D'Amico v New York Racing Assn.*, 203 AD2d 509; *Devlin v Sony Corp.*, 237 AD2d 201; *Iveson v Sweet Assocs., supra*).

For the same reason, Roth may not be held liable under Labor Law § 200. This provision codifies the common law duty to maintain a safe work place, and a contractor may be liable for violating this section only where it has the authority "to control the activity bringing about the injury" (*Russin v Picciano & Son, supra*, at 317; *see also, Sheridan v Beaver Tower*, 229 AD2d 302, *lv dismissed* 89 NY2d 860). Thus, absent a demonstration of Roth's control, the Labor Law § 200 claim was also properly dismissed.

Eyris's final contention is that the future damages award should be vacated because the court permitted plaintiff to offer medical evidence concerning the permanence of his injuries that was not included in the medical reports previously exchanged, in violation of 22 NYCRR 202.17 (h). This claim is unreviewable as Eyris failed to include the report in the record on appeal (*see, Kahn v City of New York*, 37 AD2d 520, *affd* 30 NY2d 690). In any event, the court properly exercised its discretion in permitting the testimony. Eyris was not surprised or prejudiced since the plaintiff alleged that the injuries were continuing and permanent in his bill of particulars, and Eyris's new counsel declined to make use of the additional medical authorizations provided by plaintiff, or to call any of the three physicians it had retained to examine plaintiff (*see, Dowling v*

*257 Assocs.*, 235 AD2d 293; *Freeman v Kirkland*, 184 AD2d 331). Concur—Milonas, J. P., Ellerin and Mazzarelli, JJ.

Tom, J., dissents in a memorandum as follows: The issue under review in this appeal is whether the failure of defendant general contractor to plank over an opening to a spiral staircase at the worksite or to otherwise take steps to have prevented the worker's backward walk into the staircase opening triggers the strict liability standards of Labor Law § 240 (1).

The relevant facts are undisputed. Defendant Eyris Productions, Inc. was hired by the owner of premises known as 140 Thompson Street in Manhattan as the general contractor to renovate apartment number 2 by converting two apartments into a single apartment. Eyris hired third-party defendant Roth Painting Co., Inc. to perform the painting work for the project. Plaintiff Anthony Serpe was an employee of Roth.

As part of the renovation, a spiral staircase connecting the first and second floors had been placed in the opening in the second floor, and the handrail and all but the top two steps had been mounted, with a consequential 1 to 1½ foot drop from the second floor landing to the staircase. No railing extended around the staircase opening on the second floor, although planking previously had been placed over the opening. On the day of the accident, most of the renovation, and most of the subsequent painting, had already been completed. Just prior to the accident, plaintiff, who had been on-site for 2½ weeks, was standing on the floor of the apartment and doing touch-up painting with an extension pole on the second-floor ceiling. He backed up as he painted, approaching and then falling over the edge of the staircase opening. There is no evidence that the floor itself was other than sound and complete, but for the opening. Nor does the evidence indicate that plaintiff fell as he extended himself, unprotected, over the stairwell opening. Rather, his fall was a consequence of his failure to observe the opening as he stepped backward, rather than a consequence of painting being done on the ceiling from a necessarily elevated location over the opening. This distinction is critical to the present appeal. Plaintiff landed momentarily on the staircase, but tumbled down the stairs, for a total fall of about 10 feet. The injuries to plaintiff are well established in the record, and on this appeal we address only the issue of liability under Labor Law § 240 (1).

Plaintiff commenced the instant action asserting, *inter alia*, that defendant Eyris violated Labor Law §§ 240 and 241. Defendant Eyris then instituted a third-party action against plaintiff's employer, Roth Painting Co. After the close of the li-

ability testimony in this bifurcated trial, the trial court directed a verdict in favor of plaintiff Serpe against defendant Eyris finding, as a matter of law, that defendant violated Labor Law § 240 (1). The court subsequently dismissed the third-party action as against Roth Painting Co. at the conclusion of the damages portion of the trial. The jury returned a verdict in favor of plaintiff in the amount of $350,000. Defendant and third-party plaintiff appeals from the judgment.

Defendant contends that application of Labor Law § 240 (1) under these facts renders Labor Law § 241-a, the more specifically controlling provision, meaningless. Defendant also argues that plaintiff's failure to affirmatively plead and prove that the absence of the enumerated safety devices required by Labor Law § 240 (1) was the proximate cause of the injury warrants reversal as a matter of law. I agree in both respects.

Labor Law § 240 (1), known historically as the "scaffolding law," has been impervious to easy and clear application. It was designed to place responsibility for the safety of a worker performing work within the contemplation of the statute squarely on the owner and contractor, rather than on the worker, in furtherance of protecting the worker from risks associated with elevation differentials (*Felker v Corning Inc.*, 90 NY2d 219), which accounts for its strict liability standard. In relevant part, Labor Law § 240 (1) provides: "[a]ll contractors and owners * * * in the * * * repairing, altering, painting * * * of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240 (1) has been extensively litigated with respect to the nature of the risks encompassed and as to which safety devices to guard against such risks are included within the ambit of the statute.

By contrast, Labor Law § 241-a specifically and unequivocally requires that: "Any men working in or at * * * stairwells of buildings in course of construction or demolition shall be protected by sound planking at least two inches thick laid across the opening at levels not more than two stories above and not more than one story below such men."

More generally, Labor Law § 241 (6) requires that: "All areas in which construction * * * or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and

adequate protection and safety to the persons employed therein".

Excepting the circumstance of the number of floors that the plaintiff fell, Labor Law § 241-a otherwise would directly apply to these facts. In its general terms, Labor Law § 241 (6) also would provide a basis for defendant's liability. The issue for appeal is whether Labor Law § 240 (1) also could apply, in a situation where there is no evidence that the plaintiff's work required the use of scaffolding, ladders, hoists or similar devices; where his fall was happenstance in relation to his work (*compare, Felker v Corning Inc., supra* [plaintiff was painting the ceiling of an alcove when he fell over a partition and through the suspended ceiling adjacent to the partition more than eight feet to the floor below]); and where the utilization of the safety devices enumerated in Labor Law § 240 (1) would not have prevented the inadvertent misstep (as contrasted with, e.g., the use of planking).

Our Court and other courts have recognized that as a general principle, work performed on or at stairwells and stairways does not trigger Labor Law § 240 (1) (*Ryan v Morse Diesel*, 98 AD2d 615 [defect on stair]; *Barnes v Park Cong. Church*, 145 AD2d 889, *lv dismissed* 74 NY2d 650 [plaintiff hit head on beam as he ascended staircase; nature of work not "elevated"]; *Cliquennoi v Michaels Group*, 178 AD2d 839 [plaintiff tripped over board nailed along edge of stairway landing, and fell into stairwell]; *cf., Wescott v Shear*, 161 AD2d 925 [temporary staircase deemed the equivalent of a ladder or platform]) especially when the injuries arise from the failure to plank over the stairwell (*see, Spinelli v St. John Nepomucene R. C. Church*, 140 AD2d 427; *Marcellino v Nigro*, 149 AD2d 775). Although the factual circumstances are not directly analogous in *Ryan* (*supra* [the staircase causing injury was used as a passageway rather than as safety device]), we nevertheless construed Labor Law § 240 (1) strictly according to its terms, and considered that alternative relief was available, in that case under Labor Law § 241 (6). Although more recent Court of Appeals rulings have tried to clarify the nature of the elevation-related risks covered, and not covered, by Labor Law § 240 (1) (*see, Rocovich v Consolidated Edison Co.*, 78 NY2d 509; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494), *Ryan (supra)* and particularly *Spinelli* and *Marcellino (supra)* remain good law. To the contrary, their specific tenets remain consistent with the general principles articulated in *Rocovich, Ross* and, more recently, *Felker (supra)*.

Turning to the statutory terms, although we should liberally

apply them in furtherance of the legislative purpose of protecting workers at elevated worksites, they still must be strictly construed. Two requisite avenues of analysis are necessary: whether the subject work, or worksite, invoked the need to protect workers as required by Labor Law § 240 (1); and, if so, whether the lack of or the use of defective or inadequate enumerated safety devices was a proximate cause of the accident (*see, Felker v Corning Inc., supra*).

With respect to the first question, neither the work nor the worksite under the factual circumstances of this case falls within the purview of Labor Law § 240. The section addresses that which creates inherent significant risks as a direct consequence of the relative elevation at which the work must be performed or at which materials must be positioned or secured (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, *supra*). The section is intended to provide protection against risks due in some way to relative differences in elevation; however, those differences in elevation still must be task-related (*supra*). Here, plaintiff was standing on a solid and sound floor, and performing touch-up painting on the ceiling using an extension pole. As the Court of Appeals has noted: "The contemplated hazards are those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured" (*Rocovich v Consolidated Edison Co., supra,* at 514). Merely working in proximity to a location where a slip and fall may occur does not create the elevation-related risk contemplated by the statute (*supra*). Rather, insofar as is relevant to these facts, the clear legislative intent was to provide the exceptional protection afforded by Labor Law § 240 (1) only when "special hazards" are presented by an elevated worksite. These special hazards do not arise merely because of some tangential effects of gravity, but because the enumerated protective devices are absent or are inadequate to shield the worker from the effects of gravity (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500-501, *supra*).

Plaintiff's misstep from a solid floor (*compare, Serino v Miller Brewing Co.*, 167 AD2d 917, *lv dismissed* 78 NY2d 1008 [during ongoing construction involving second floor, concrete floor was riddled with holes; plaintiff's fall through hole converted entire floor into elevated worksite]; *see also, Fuller v Catalfamo,* 223 AD2d 850 [plaintiff climbed to top of interior wall above second floor decking to put top plate on second story;

wall "whipped out"; fall from second story was elevation-related risk]) into the stairwell, when there is no proof that his presence in that particular location was required by the task being done, was not such a special hazard as to trigger the application of Labor Law § 240 (1). Rather, the failure to plank over the stairwell opening created the hazard that someone—anyone—whether working or not, might step into it, which is a harm redressed by Labor Law § 241-a.

There might have been an injury caused by elevation, but the elevation had no nexus with the task being performed by plaintiff. The majority's hypothetical concerning a fall from 20 stories does not change the result: the analysis is driven by height in relation to task, a point inherent in the majority's own case law, and not solely by the fact of height. By illustration, if plaintiff had been suspended over the opening in order to paint the ceiling over the stairwell, or, more specifically, needed a ladder or similar device to reach that work area (*see, e.g., Felker v Corning Inc., supra*), the tension between the respective applications of Labor Law § 240 (1) and § 241-a would present a closer issue. However, that is not the present case: it bears repeating that the plaintiff was backing up on a solid floor as he touched up the ceiling, necessarily performing work on an area that did not require his suspension over the stairwell. Since the plaintiff was not working in an elevated location within the meaning of the statute, this basis, alone, should have warranted dismissal of the Labor Law § 240 (1) claim.

Turning to the enumerated safety devices, we would note initially that plaintiff failed to plead the inadequacy or absence of the enumerated safety devices either in the complaint or the bill of particulars. Rather, the general allegations in the complaint track the standards set forth in Labor Law § 241 (6), relating to an unsafe workplace. Even if specifically pleaded, though, the enumerated devices or some equivalent must be demonstrated, with some exactitude, to have served a useful purpose in preventing the accident (*see, Felker v Corning Inc., supra*). The point of the enumerated safety devices is to shield the worker from the harm that is inherent in the elevated nature of his work, in furtherance of which the statute "mandate[s] devices having [this] specific purpose" (*Rocovich v Consolidated Edison Co., supra*, at 515). Hence, by illustration, for a laborer working in (or under) an elevated location, if the scaffold, hoist, stay, ladder, sling, hanger, block, pulley, brace, iron or rope is defective, malfunctions or is inadequate, and injury results from a resulting fall, then strict liability applies

under Labor Law § 240 (1); if the injury, albeit at an elevated location, results, rather, from some other agency, then liability is not established under Labor Law § 240 (1) (*Ross v Curtis-Palmer Hydro-Elec. Co., supra* [welder welding seam from position on scaffold suffered back strain; however, the purported inadequacy of the scaffold did not result in a fall]). The focus is on how the safety device would have performed to have prevented a fall in relation to the work being performed.

Plaintiff in this case navigated around the finished second floor as he touched up the completed painting job. For the purpose of touching up the locations to which plaintiff was attending, no scaffold, hoist, stay, ladder, sling, hanger, block, pulley, brace, iron, or rope was necessary to have prevented the fall in this case.

Nor may plaintiff give undue expansion to the miscellaneous term "other devices" to include almost any device—such as planking or barriers—that might have prevented this fall. Rather, as we have noted in the past, this term, under standard canons of statutory construction, necessarily is qualified by the terms that precede it (*Ryan v Morse Diesel, supra*), all of which are safety devices that specifically refer to the temporary elevation of the worker to access, or to reach over, the worksite, or that would protect him from being struck by falling materials.

Finally, returning to the observation made at the outset of this dissent, there are alternative, more precise, means of statutory relief, albeit with a less generous standard of liability, in Labor Law § 241 (6) and § 241-a. To allow for redundant theories of recovery for the same workplace defect, under essentially contrary standards, logically creates an internal inconsistency in the Labor Law. Under these circumstances, Labor Law § 241 (6), and more particularly Labor Law § 241-a, would become meaningless when coupled with the plaintiff's reliance on Labor Law § 240 (1), which imposes strict liability on the defendant. The Court of Appeals, in rejecting Labor Law § 240 (1) liability in favor of Labor Law § 241 (6) liability, noted that "[i]t is an accepted rule that all parts of a statute are intended to be given effect and that a statutory construction which renders one part meaningless should be avoided" (*Rocovich v Consolidated Edison Co., supra*, at 515).

Accordingly, I would reverse and grant judgment to defendant on the claim advanced under Labor Law § 240 (1), and to that extent I would also dismiss the third-party complaint insofar as it is related to the Labor Law § 240 (1) claim, and remand for further proceedings on the remaining claims.