■ WANDERLEI GASQUES et al., Appellants, v STATE OF NEW YORK, Respondent. [873 NYS2d 717]—

In a claim to recover damages for personal injuries, etc., the claimants appeal from an order of the Court of Claims (Waldon, J.), dated September 6, 2006, which granted the defendant's motion for summary judgment dismissing the claim.

Ordered that the order is modified, on the law, by deleting the provision thereof granting those branches of the defendant's motion which were for summary judgment dismissing the Labor

Law § 200 and common-law negligence claims, and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed, without costs or disbursements.

The injured claimant, while ascending the Brooklyn tower of the Kosciuszko Bridge on a two-point suspension scaffold, sustained injuries when he stopped the scaffold, and his hand was crushed between the motor control of the scaffold and the steel of the bridge. The injured claimant and his wife (hereinafter the claimants) brought the instant claim alleging violations of Labor Law § 240 (1), § 241 (6) and § 200, and common-law negligence.

"Labor Law § 240 (1) provides exceptional protection for workers against the special hazards that arise when the work site itself is either elevated or is positioned below the level where materials or load are being hoisted or secured" (*Natale v City of New York*, 33 AD3d 772, 773-774 [2006]; *see Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267-268 [2001]). "These special hazards do not encompass any and all perils that may be connected in some tangential way with the effects of gravity. Rather, they are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured" (*Gonzalez v Turner Constr. Co.*, 29 AD3d 630, 631 [2006]).

The defendant made a prima facie showing of entitlement to judgment as a matter of law dismissing the Labor Law § 240 (1) claim by demonstrating that the injured claimant's injury, while tangentially related to the effects of gravity, was not caused by the limited type of elevation-related hazards encompassed by the statute (*see Sajid v Tribeca N. Assoc. L.P.*, 20 AD3d 301 [2005]; *O'Brien v Triborough Bridge & Tunnel Auth.*, 17 AD3d 105 [2005]; *Zdunczyk v Ginther*, 15 AD3d 574 [2005]). In opposition, the claimants failed to raise a triable issue of fact.

Labor Law § 200 is a codification of the common-law duty imposed on owners and contractors to provide workers with a safe place to work (*see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998]). "This provision applies to owners, contractors, and their agents" (*Romang v Welsbach Elec. Corp.*, 47 AD3d 789, 789 [2008]). The accident here stems not "from a dangerous condition on the premises" (*Keating v Nanuet Bd. of Educ.*, 40 AD3d 706, 708 [2007]), but from the manner in which the work was being performed (*id.*). To be held liable under Labor Law § 200 and for common-law negligence when the method and manner of the work is at issue, it must be shown that "the party to be charged had the authority to supervise or control the performance of the work" (*Ortega v Puccia*, 57 AD3d

54, 61 [2008]; *see Chowdhury v Rodriguez,* 57 AD3d 121 [2008]). While the right to generally supervise the work, stop the contractor's work if a safety violation is noted, or to ensure compliance with safety regulations and contract specifications is insufficient to impose liability under Labor Law § 200 or for common-law negligence (*see McLeod v Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Sts.,* 41 AD3d 796, 798 [2007]; *Peay v New York City School Constr. Auth.,* 35 AD3d 566, 567 [2006]; *Warnitz v Liro Group,* 254 AD2d 411 [1998]), the defendant, on the record before us, failed to make a prima facie showing that it did not have the authority to control the manner in which the claimant's work was performed (*see Hurtado v Interstate Materials Corp.,* 56 AD3d 722 [2008]).

12 NYCRR 23-1.5 (c) (1) is a general safety standard, which is an insufficient predicate for liability under Labor Law § 241 (6) (*see Maday v Gabe's Contr., LLC,* 20 AD3d 513 [2005]; *Sparkes v Berger,* 11 AD3d 601 [2004]; *Madir v 21-23 Maiden Lane Realty, LLC,* 9 AD3d 450 [2004]). Therefore, the defendant met its prima facie burden of establishing its entitlement to summary judgment dismissing the Labor Law § 241 (6) claim by showing that the claimants failed to allege the violation of a sufficiently specific Industrial Code provision. In opposition, the claimants failed to raise a triable issue of fact.

Accordingly, the Court of Claims properly granted those branches of the defendant's motion which were for summary judgment dismissing the Labor Law § 240 (1) and § 241 (6) claims and erred in granting those branches of the defendant's motion which were for summary judgment dismissing the Labor Law § 200 and common-law negligence claims. Fisher, J.P., Dillon and McCarthy, JJ., concur. Belen, J. (concurring in part and dissenting in part and voting to modify the order by deleting the provisions thereof granting those branches of the defendant's motion which were for summary judgment dismissing the Labor Law §§ 200 and 240 [1] claims and the common-law negligence claim, and substituting therefor provisions denying those branches of the motion, and, as so modified, to affirm the order, with the following memorandum): I respectfully dissent. While I concur with the majority that the Labor Law § 241 (6) claim must be dismissed, and that the Labor Law § 200 and common-law negligence claims should not be dismissed, I disagree with the majority's dismissal of the Labor Law § 240 (1) claim, and its conclusion that the injury was caused by a peril merely tangential to the effect of gravity.

Wanderlei Gasques (hereinafter the claimant) was employed by Ahern Painting Contractors, which had a contract with the

State of New York to repaint the Kosciuszko Bridge. The claimant and his partner were working inside the Brooklyn tower of the bridge. They were suspended on a "spider scaffold," sandblasting and painting the bridge. This scaffold had a motor on each end and each motor was controlled independently of the other, activated by two workers individually holding down the switch on each of their motors on their respective side of the scaffold. The motor would then grip the cable running down from the top of the bridge and the scaffold would ascend like a trolley car on a track.

The claimant described several safety problems with this scaffold. First, the switches on the scaffold were outside of the platform, requiring the workers to reach behind the cable to activate their motors. Another safety problem was that the scaffold was too wide for the upper portion of the bridge tower, thus it could not ascend the tower without tilting its way up, inclining up essentially in a "see-saw" fashion. As described by defense counsel in the affirmation in support of summary judgment: "The scaffold moves along cables inside the bridge towers; the towers narrow upon ascent. . . . Consequently, the space within the bridge support becomes more confined as the elevation increases. . . . When the scaffold rises, it is necessary for each painter to guide the scaffold with the hand not on the control switch to prevent the scaffold from swaying. . . . Each painter carries a coil of spray line to the spider scaffold. . . . He drops the rolled up coil underneath the scaffold and fixes the spray line to the side of the scaffold with a piece of rope. . . . The painters watch the spray line to make sure that they do not tangle and interfere with the operation of the spider lift."

To further complicate matters, the workers needed access to several hoses to provide paint and material to the spray guns they used in their sandblasting and painting operation. If the hoses became stuck or entangled in the too narrow space outside the lift, the painter would essentially have to reach outside the scaffold and under it to reach the hoses. There was no space for the workers to reach the hoses on the sides of the scaffold in that narrow space without getting crushed between the motor and the bridge, thus the scaffold inadequately protected the workers for the job they had to do.

The workers wore full face masks as well as earplugs to protect themselves from the fumes and the deafening noises of the spray guns and motors. At one point during the ascent in the tower, the claimant's paint hose caught on something below as the scaffold moved up. The claimant reached for the hose and reached to the motor control to stop the scaffold. He

screamed for his partner to stop moving his end of the scaffold, but his partner could not hear him and continued holding down his switch moving his side of the scaffold up, thus tilting the claimant down. The claimant's hand then got caught on the motor control on his side of the scaffold and the metal plate of the bridge, crushing his hand. The guard rail on the scaffold could not be higher than the controller for the motor since if it were, it would block the workers from doing their jobs.

In opposition to the defendant's motion for summary judgment, the claimant presented the affidavit of an expert who opined that the motor control on the spider scaffold "which was of the fixed position type used to make the scaffold ascend and descend was unsafe and defective in that it was not provided with a means of locking it in the off position nor was it provided with a guard to prevent accidental activation."

The claimant has unquestionably raised triable issues of fact with regard to his Labor Law § 240 (1) claim. Labor Law § 240 (1) provides that "[a]ll contractors and owners . . . shall furnish or erect, or cause to be furnished or erected . . . scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." Labor Law § 240 (1) is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed (*see Koenig v Patrick Constr. Corp.,* 298 NY 313, 319 [1948]; *Quigley v Thatcher,* 207 NY 66, 68 [1912]).

The scaffold provided to the claimant contained nothing to prevent the type of accident that foreseeably happened with the uncovered motor control outside of the platform crushing his hand. It is well established that "the availability of a particular safety device [such as a scaffold] will not shield an owner or general contractor from absolute liability if the device alone is not sufficient to provide safety without the use of additional precautionary devices" (*Smizaski v 784 Park Ave. Realty,* 264 AD2d 364, 365 [1999], quoting *Conway v New York State Teachers' Retirement Sys.,* 141 AD2d 957, 958-959 [1988]).

In a case quite similar to this, *Ienco v RFD Second Ave., LLC* (41 AD3d 537 [2007]), the plaintiff, while working with a partner to move a beam, was struck in the shoulder by the beam while in a struggle to remove the beam from a column. This caused him to lose his balance. He was injured when, in attempting to stop himself from falling, he braced his foot against a piece of metal and hit his head against the column, sustaining a head injury.

In *Ienco,* this Court stated: "Labor Law § 240 (1) requires

contractors and owners to provide workers with appropriate safety devices to protect against 'such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured' (*Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494, 501 [1993]). . . . Ienco's deposition testimony raises a triable issue of fact as to whether he was provided with any safety devices such as a harness. As the Supreme Court correctly determined, '[i]t is of no consequence that plaintiff allegedly sustained injuries as he prevented himself from falling further' (*Ortiz v Turner Constr. Co.,* 28 AD3d 627, 628 [2006])" (*Ienco v RFD Second Ave., LLC,* 41 AD3d at 538-539 [citations omitted]).

Likewise in *Skow v Jones, Lang & Wooton Corp.* (240 AD2d 194, 195 [1997]), the First Department stated the following: "That plaintiff neither fell from a height nor was struck by a falling object does not require dismissal of his section 240 (1) claim, the proof being sufficient to show that his injury was caused by his effort to prevent the pump from falling (*see, Wensley v Argonox Constr. Corp.,* 228 AD2d 823 [1996], *lv dismissed* 89 NY2d 861 [1996]; *Prekulaj v Terano Realty,* 235 AD2d 201 [1997])."

In *Sasso v NYMED, Inc.* (238 AD2d 799 [1997]), another case comparable to the present case and cited by the claimant, Sasso was injured while installing sheet rock at a construction site. The slab of sheet rock began to fall and as he reached to grab it, he was pulled partially over the protective railing around the scaffold upon which he was standing, injuring his back. The Appellate Division, Third Department, concluded that "the accident in question was the direct consequence of the application of gravity to the sheetrock, which, having been inadequately hoisted or secured, posed a special hazard because 'of a difference between the elevation level of the required work and a lower level' (*Rocovich v Consolidated Edison Co.,* 78 NY2d 509, 514; *see Sheridan v Beaver Tower,* 229 AD2d 302, 303-304, *lv dismissed* 89 NY2d 860). The fact that plaintiff did not himself fall is not dispositive, for while the scaffold shielded him from the risk posed by the location of his worksite some six feet above the ground, it did not protect him from the distinctly separate, elevation-related hazard created by the need to suspend a 50-pound piece of sheetrock over his head" (*Sasso v NYMED, Inc.,* 238 AD2d at 800 [citations omitted]).

Thus, the claimant's case here falls squarely within the line of cases that find a Labor Law § 240 (1) violation where a worker is injured in an attempt to secure an object that is improperly hoisted (the paint hose). Moreover, it is respectfully

submitted that the cases cited by the majority are all significantly distinguishable from the case presented here.

In *Zdunczyk v Ginther* (15 AD3d 574 [2005]), the plaintiff allegedly injured his hand when, while assisting a coworker in lowering construction debris, the coworker suddenly released the rope to which the bucket was attached. This Court held that the plaintiff's injury was tangentially related to the effects of gravity upon the bucket and arose from the usual and ordinary dangers of a construction site rather than the kind of elevation-related risk contemplated by the statute. Similarly, in *Sajid v Tribeca N. Assoc. L.P.* (20 AD3d 301 [2005]), the Appellate Division, First Department, found that when a counterweight fell and crushed the plaintiff's hand it was not an accident caused by an elevation-related risk, as the counterweight was not elevated over the work site. In fact, the counterweight was not even elevated waist high and fell only eight inches. Finally, in *O'Brien v Triborough Bridge & Tunnel Auth.* (17 AD3d 105 [2005]), the plaintiff's hand hit an iron beam when he was working on a slippery wooden box. This also appears to be more of a workplace accident not resulting from the particular risks of hoisting something to a height.

The claimant in the case at bar was not even remotely injured by something that could be seen as resulting from the "usual and ordinary dangers of a construction site" (*Zdunczyk v Ginther,* 15 AD3d at 575). As has been noted extensively above, he was working on a tilting spider scaffold at a high elevation that required the coordinated effort of a coworker to ascend. The scaffold itself was dangerously constructed so that it tilted and yet it was forced to see-saw in order to climb through an ever narrowing bridge tower. The main tool for his work was a paint hose that was improperly secured and hoisted so that it got stuck. In an effort to retrieve his hose, he was forced to reach for it causing the scaffold to tilt. In an effort to both prevent his fall and retrieve the hose, he got his hand crushed by an improperly and unsafely exposed motor.

Here, the claimant submitted evidence that the work involved a significant inherent risk attributable to an elevation differential, as the hoses dangled from the scaffold to the ground at a great height as the scaffold tilted up and down as it rose higher in the tower (*see e.g. Ienco v RFD Second Ave., LLC,* 41 AD3d 537 [2007]; *Ortiz v Turner Constr. Co.,* 28 AD3d 627, 628 [2006]; *Kollbeck v 417 FS Realty,* 4 AD3d 314 [2004]; *Smith v Artco Indus. Laundries,* 222 AD2d 1028 [1995]) and the claimant was compelled to reach dangerously outside the see-sawing platform to prevent the dangling hoses from entangling

or dropping to the ground, with no safety device such as a guard covering the motor to protect him from this hazard (*see e.g. Berg v Albany Ladder Co., Inc.,* 10 NY3d 902 [2008]; *Striegel v Hillcrest Hgts. Dev. Corp.,* 100 NY2d 974 [2003]; *Farrington v Bovis Lend Lease LMB, Inc.,* 51 AD3d 624 [2008]; *Francis v Foremost Contr. Corp.,* 47 AD3d 672 [2008]). This is clearly a case that falls within the coverage of Labor Law § 240 (1).

The fact that the claimant did not himself fall from a height or have an object from the work site fall upon him does not preclude recovery under Labor Law § 240 (1). While the scaffold protected the claimant from the risk posed of falling from the heights of the work site, it did not protect him from the distinctly separate elevation hazard created by the need to untangle hose lines while suspended on a tilting platform, squeezed into a narrow opening with an exposed metal motor control projecting against the metal bridge surface. It is clear that the claimant's injury was a foreseeable consequence of the defendant's failure to provide a safe place to work and to place proper protective devices where they were called for (*see Kollbeck v 417 FS Realty,* 4 AD3d 314 [2004]; *Sasso v NYMED, Inc.,* 238 AD2d 799 [1997]). Accordingly, the claimant has raised triable issues of fact sufficient to defeat summary judgment dismissing the Labor Law § 240 (1) claim. The order appealed from should be modified accordingly and the claimant allowed his day in court on this claim.