OPINION OF THE COURT
Stephen J. Mignano, J.
Claimant, a 19-year-old newly-hired laborer, suffered serious injuries while working on a bridge rehabilitation project involving replacement of the steel bearing plates on an 1-287 overpass in Rye, part of a larger 31-bridge project. He alleges, via his guardian, that defendant, owner of the work site, is responsible for his injuries and on this motion seeks partial summary judgment establishing liability pursuant to various provisions of the Labor Law. Defendant opposes claimant’s motion and cross-moves for summary judgment of dismissal.
The project involved hoisting new steel bearing plates, each weighing 200-250 pounds, up a 37-39 degree sloped embankment about 37.5 feet to the underside of the overpass. The contractor’s superintendent testified that the original plan was to lower the plates from the highway above using a boom truck, but the truck was unavailable so an alternate plan was devised by a carpenter for the contractor using a “come-along”—a ratcheting pulling device with hooks on both ends. One hook was attached to a bolt anchored in the concrete abutment at the top of the slope. A nylon rope was threaded through the other hook, with a cart containing the plates (one at a time) attached to one end of the rope and a truck attached to the other end, driving and pulling the load up the slope. The subject accident occurred during the first operation of the day, although it had been used the day before without incident.
Gabriel Gentile testified that three men were involved—he would drive the truck, foreman Jorge Rodriguez would load the plates onto the cart at the bottom of the slope, and claimant would unload the plates at the top and send the wagon back down. That was the plan. He testified that on July 13, 2011, after being signaled by Rodriguez, he was driving the truck and almost reached the point that marked the end of the run, when he suddenly felt the line go slack. When he looked back he saw claimant rolling down the slope. It appears from Rodriguez’s testimony that he had lost sight of the cart and claimant, was not sure if the cart had reached the top, and was repositioning himself to see better when he heard a voice yell and saw claimant rolling down the hill.
Anthony Mangone, a safety consultant for the contractor, investigated and filed an incident report, writing that
*546 “[a]fter several [unknown] trips up and down the pulley end being used to anchor the operation failed under load. As a result the entire come-along and load was released and struck Mr. Suarez in the head and face knocking him down the slope of the abutment unconscious and in respiratory arrest” (exhibit 23).
The accident was investigated by OSHA, which found
“that the employees used a . . . manually lever operated cable hoist ... as a block [pulley] for an operation where they towed a cart containing a bridge bearing plate up an embankment to the overpass footing. The load block/pulley hook of the hoist was attached to a 1 inch diameter 5.5 inch long bolt at the footing . . . The truck was located 93 feet down the service shoulder from the cement pier at the time of the accident therefore the cart was almost at the top of the embankment. The employee was located to the left rear of the cart. The cast aluminum yoke of the load pulley snapped sending the hoist, pulley and cart down the embankment.” (Exhibit 26 at 1.)
In its citation and notification of penalty, OSHA concluded:
“The employer did not furnish employment and a place of employment which were free from recognized hazards that were causing or likely to cause death or serious physical harm to employees in that employees were exposed to being struck by components of the hoist and/or the load should a manually operated cable hoist fail because of improper use: ... ‘A Hook International Inc. Industrial Cable Hoist, Model H24-20 was used for a purpose for which it was not intended or designed and the hoist was used in a manner where it was restricted from forming a straight line with the direction of loading creating a side pull.’ ” (Exhibit 14 at 6.)
Mangone explained that the come-along is properly used as a ratcheting device to pull a secure load along a straight line, and that using it to hoist the load up the slope was improper and what caused it to fail, as found by OSHA, whose findings he agreed with in all respects.
The threshold point of contention on these cross motions for summary judgment is the applicability of Labor Law § 240 (1) to the above recited facts. That statute requires that owners *547 and contractors engaged “in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure,” except certain owners of one- and two-family dwellings, “furnish or erect . . . scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person” employed in the performance of such labor. The statute imposes absolute liability on contractors or owners where the failure to provide proper protection as required by the statute is a proximate cause of a worker’s injury (see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp., 18 NY3d 1 [2011]). Claimant maintains that the undisputed facts establish a prima facie case under Labor Law § 240 (1) and governing case law. Responding to defendant’s contention that those facts establish a scenario outside of the protection of section 240 (1), claimant argues that defendant’s arguments arise from a complete misunderstanding of the law and that the various issues of fact alleged by defendant relate to matters that are completely irrevelant to the determination of liability under the statute.
For the purpose of section 240 (1) analysis, the facts of this case are on all fours with those in Runner v New York Stock Exch., Inc. (13 NY3d 599 [2009]) where the plaintiff injured his hands while moving an 800-pound reel of wire down a set of four stairs. A makeshift pulley operation was used with a rope attached to the reel wrapped around a metal bar at the top of the stairs while workers, essentially used as a counterweight, held the other end intending to lower the reel slowly. The weight proved too heavy and plaintiff’s hands were drawn up into the bar, causing injury. The evidence was that a pulley or hoist should have been used and the “jerry-rigged device actually employed had not been adequate to that task” {id. at 602).
The Court in Runner noted that although the statute provides for absolute liability, it applies only to a narrow category of workplace risks—those arising from elevation differentials—and that the defendant in that case argued that “gravity must operate directly upon either the plaintiff or upon an object falling upon the plaintiff” for there to be liability under the statute {id. at 604). In categorically rejecting defendant’s formulation, the Court noted that although precedent had noted that the special hazards arising from elevation differentials encompass both “falling worker” and “falling object” cases (see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494 *548 [1993]; Narducci v Manhasset Bay Assoc., 96 NY2d 259 [2001]), the statute’s scope is not so limited:
“But in referring to these familiar scenarios in which section 240 (1) liability may arise, neither decision purports exhaustively to define the statute’s protective reach. Rather, the governing rule is to be found in the language from Ross . . . [the statute] was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person” (Runner, 13 NY3d at 604 [internal quotation marks omitted], quoting Ross, 81 NY2d at 501).
The fact that plaintiff was injured by his hands being drawn into the bar was irrevelant. The harm flowed directly from the failure of the lifting device to provide proper protection against risks arising from the force of gravity and the Court noted that the legal analysis was the same as if plaintiff had been hit by the falling reel. A device of the sort specifically enumerated in the statute had not been provided or properly placed and as a result the plaintiff was injured.
In Nicometi v Vineyards of Fredonia, LLC (25 NY3d 90 [2015]), the Court illustrates and articulates precisely the questions that must be addressed in determining liability under the statute. There, the plaintiff was working on stilts installing insulation in a 9-to-10-foot-high ceiling when his stilts slipped on ice on the concrete floor and he fell. On the surface, perhaps, that was a clear “falling worker” case. However, that conclusion could not withstand analysis under the principles collated in the decision, which distill into two questions: (1) whether the injuries were a direct result of a failure to provide adequate protection against a risk arising from a significant elevation differential, and (2) whether the injuries were the result of the failure to use or the inadequacy of a safety device of the type enumerated in the statute. Applying those principles to the facts of that case, the Court held that the hazard that caused the injury—the slippery floor—was totally unrelated to the elevation-related risk that brought about the need for the safety device, the stilts, and that it was not the failure of the device that led to injury but an icy floor, a routine non-elevation-related hazard.
Applying the law to the undisputed relevant facts of this case leads to the inevitable finding that claimant has estab *549 lished a prima facie case of liability under the statute. Analysis of defendant’s submissions in opposition reveals them to be empty of any meaningful contention in opposition.
Defendant contends that gravity is irrevelant to this case, that the evidence shows that the come-along failed because of lateral forces, “side pull,” that there is no proof that claimant was injured by a falling object and that it is most likely that his wounds were caused not by gravity but by items striking him laterally after the device failed. Based on affidavits from an engineer and a construction site expert, neither of which contains anything relevant to the determination of this motion, defendant contends that “claimant being struck by the subject come-along was not the result of the application of the force of gravity upon the come-along” a statement that epitomizes defendant’s misapprehension of applicable law.
Defendant first parses the claim into “claimant’s falling worker claim” and “claimant’s falling object claim” in complete disregard of what is clearly set forth in case law (cited above). The claim here is that claimant was injured as the result of the failure of a makeshift hoist—a safety device specifically enumerated in the statute—being used to raise heavy material up a slope. Defendant does not dispute that fact (although it would not use the word “hoist”), nor does it dispute the finding that the incident occurred as the result of the misuse of the come-along with the result that it was subjected to forces for which it was not designed—lateral forces—which caused it to fail. Indeed, it uses that finding as a sword in its attempt to take the case out of the statute, contending that since the forces that caused the device to fail were lateral ones, not gravity, claimant’s case fails notwithstanding that the misuse of the device was to lift heavy objects from one elevation to another. No legal support is offered for this novel contention and indeed there is no support for such a restrictive interpretation of what the Court of Appeals means by an injury being the “direct” result of the failure to provide proper protection against an elevation-related differential.
That the immediate force that caused the device to fail may have been what defendant’s engineer calls a sideways force or a side pull is completely irrevelant to the fact that the safety device, the hoist being used to lift the weight, failed and struck the claimant. Whether it failed because of the immediate application of a sideways or downwards force has no bearing on whether claimant was struck by pieces of the failed device *550 from above or laterally. Notwithstanding defendant’s cavil— the entire basis of its extensive opposition papers including two expert affidavits, filled with irrelevancies, all based on a complete misconception of the law—the fact remains that claimant’s injuries were the direct result of the failure to properly utilize a proper device to protect against risks arising from the need to raise heavy objects from one elevation to another with the result that the device failed and struck claimant. Defendant attempts to parse the forces involved into vertical and lateral, contending that because the device was used improperly so that lateral forces were applied to it causing it to break, and then concludes from that fact that the injury did not flow “directly” from the application of gravity, and therefore the statute does not apply. There is no support in the case law for such a strained and constricted interpretation of the word “directly”: that if something comes in between the force of gravity and the force that resulted in injury, then the injury did not “directly” result from gravity and the statute is therefore of necessity not implicated.
Whatever the specific combination of forces that caused the come-along to break, and whatever the trajectory taken by the objects that struck claimant, it is clear that the incident occurred as the direct result of the failure to provide proper protection against risks occasioned by a significant elevation differential and specifically as the result of the catastrophic failure of the hoisting device with the result that claimant was struck by the device and the load it was lifting. Defendant’s various contentions that claimant was not injured as the “direct” result of gravity[1] are erroneous on their face and utterly unsupported by any of the cited decisions.[2] Nor do any of these supposed factual questions, including whether the load *551 had reached the top of the run or not, have any bearing on the statutory analysis.* *[3]
Specifically, there is no support for defendant’s attempted distinction of this case from Runner—that the weight was pulled down by gravity, which pulled the rope down, which in turn directly pulled the plaintiff’s hands up, while here the specific force causing the device to break was lateral, caused by the misuse of a device being used to lift heavy loads. The salient fact in Runner was not the direction of movement of the precise force striking the plaintiff, or the immediate predicate to that force. If that were the determining factor, or a factor at all, the Court would have so stated. To the contrary, the Court wrote: “the single decisive question is whether plaintiff’s injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential” (13 NY3d at 603 [emphasis added]).
The quoted language is the meaning of “direct,” not defendant’s formulation. That is the portion of the Runner decision the Court quoted in Nicometi in denying recovery under the statute to a worker who fell from stilts, assuredly as the direct result of the operation of gravity, because the injury did not result from the failure to provide proper protection against elevation-relation risks. And that is the question that must certainly be answered in the positive in this case, precisely as it was in Runner. There is absolutely no dispute that claimant’s injury was caused by the failure to provide and utilize a proper hoist so as to provide proper protection to the workers against the risks attendant upon raising the heavy steel plates from the bottom of the slope to the highway above.
The court finds that claimant established, prima facie, his entitlement to judgment as a matter of law on the issue of liability on his cause of action alleging a violation of Labor Law § 240 (1) by submitting evidence demonstrating that the defendant failed to provide him with an adequate safety device, *552 and that such failure was a proximate cause of his injuries (see Olea v Overlook Towers Corp., 106 AD3d 431, 431-432 [2013]; Wicks v Leemilt's Petroleum, Inc., 103 AD3d 793, 795 [2013]; Susko v 337 Greenwich LLC, 103 AD3d 434, 435 [2013]; Bin Gu v Palm Beach Tan, Inc., 81 AD3d 867, 868 [2011]).
In opposition, “the defendant [ ] failed to raise a triable issue of fact” (Doto v Astoria Energy II, LLC, 129 AD3d 660, 662 [2d Dept 2015]). Accordingly, motion No. M-85848 is granted, liability pursuant to section 240 (1) is established.
In view of the above findings, the remainder of the motions before the court concerning sections 200 and 241 (6) are largely academic. As there is no proof of any control over or any notice of the unsafe activity undertaken by the contractor’s employees on the part of any employee of the defendant, the section 200 claim may not be sustained (Lombardi v Stout, 80 NY2d 290 [1992]; Dennis v City of New York, 304 AD2d 611 [2d Dept 2003]).
As to section 241 (6), claimant concedes that a number of the cited portions of the Industrial Code, required to sustain a cause of action under that statute (see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343 [1998]), are either not relevant to this case or insufficiently specific to support a cause of action, and that the remaining controversy is over three specific sections alleged by claimant to have been violated: Industrial Code (12 NYCRR) §§ 23-6.1 (g);[4] 23-6.1 (d)[5] and 23-6.2 (c).[6] The court agrees with defendant that none of these provisions govern the activity in question in this case. The first section deals with protection against injury arising from contact with gears or *553 other moving parts, not the case here. Neither was the problem here that the device was subject to a load in excess for which it was designed or that a fitting made from an improper metal was used, which is what the regulation addresses. There is no indication that if the come-along had been made from a different material the accident would not have occurred. Again, the problem is that the come-along was used for a purpose for which it was not intended and in a manner for which it was not designed. The quoted portions of the Industrial Code contain specifications for the sort of equipment that should have been used but was not and it makes little sense to say that the come-along violated standards that do not apply to it in the first place.
In summary, the court finds that there is no genuine dispute as to any material fact in this case. Claimant has established a prima facie claim pursuant to section 240 (1). The same facts equally establish that sections 200 and 241 (6) are not implicated. Accordingly, defendant is liable in full for claimant’s injuries pursuant to Labor Law § 240 (1) and the court will schedule a trial on damages. The causes of action pursuant to sections 200 and 241 (6) are dismissed. Motion No. M-85932 is granted and cross motion No. CM-86208 is granted to the extent indicated and otherwise denied.

. Defendant contents that no hoisting was taking place at the time of the accident (by which defendant means at the precise second of failure) because the load may have—under its unsupported hypothesis—reached the top, and that the case is merely one of operator error akin to a backhoe operator lowering his properly-operating bucket onto a coworker, or a worker injured by an explosion, or a scaffold operator whose hand was crushed between the scaffold control and a wall—all cases where it is patently obvious that the injury did not result from the failure to provide proper protection against an elevation-related risk.

. See Mohamed v City of Watervliet (106 AD3d 1244 [3d Dept 2013]), Elezaj v Carlin Constr. Co. (225 AD2d 441 [1st Dept 1996]), Abelleira v City of New York (35 Misc 3d 1240 [A], 2012 NY Slip Op 51053[U] [2012], affd 120 AD3d 1163 [2d Dept 2014]), and Gasques v State of New York (59 AD3d 666 [2d Dept 2009], affd 15 NY3d 869 [2010])—all cases where the conclusion *551 was that the injury did not directly result from the failure to provide proper protection against an elevation-related risk. None of these factual scenarios are remotely analogous to what occurred here—the failure of a hoisting device being improperly used to lift a heavy weight up a slope, with the improper use resulting in lateral forces causing the device to fail and strike a worker.

. In particular, the alleged issue of whether the load reached the top or not is completely irrevelant and defendant’s contention—that the statute’s protection applies to a load being hoisted but then immediately dissolves when the load reaches the top and there is no more upward movement—-is patently erroneous.

. “(g) Protection of moving parts. Gears, belts, sprockets, drums, sheaves and points of contact between moving parts of power-driven hoist equipment, when not guarded by location, shall be guarded in compliance with this Part (rule) and with Industrial Code Part (rule) 19.”

. “(d) Loading. Material hoisting equipment shall not be loaded in excess of the live load for which it was designed as specified by the manufacturer. Where there is any hazard to persons, all loads shall be properly trimmed to prevent dislodgment of any portions of such loads during transit. Suspended loads shall be securely slung and properly balanced before they are set in motion.”

. “(c) Fittings. All hooks, shackles and other fittings subject to tension or shear shall be drop-forged. The use of deformed or damaged hooks, shackles, chains or other fittings is prohibited. All suspended pulley blocks, sheaves, well wheels or similar devices shall be moused or securely fastened or safety hooks shall be used.”