■ BIENVENIDO CARPIO, Appellant, v TISHMAN CONSTRUC-TION CORPORATION OF NEW YORK et al., Respondents. (And a Third-Party Action.) [658 NYS2d 919] —Order, Supreme Court, New York County (Diane Lebedeff, J.), entered November 6, 1995, which denied plaintiff's motion for partial summary judgment, and upon a search of the record, granted summary judgment to the non-moving defendants dismissing the Labor Law § 240 (1) claim, reversed, on the law, without costs, the claim reinstated and plaintiff's motion is granted.

Plaintiff was employed by third-party defendant L&L Painting Co., Inc., which had been hired in connection with a construction project at the United States Post Office facilities located at 9th Avenue between 29th and 30th Streets. Defendants Tishman and Crow were the construction manager and general contractor, respectively. On September 24, 1992, plaintiff was given the task of painting the ceiling of the third floor, which he began performing by walking along the concrete floor while extending a paint roller up to the ceiling. As he was looking up at the ceiling while using the roller, plaintiff's foot backed into a hole in the floor, causing his leg to fall three feet below the surface to his groin area. The hole, referred to as a riser or sleeve, was 10 to 14 inches wide, was not covered and was created to permit the extension of piping to the floor below. There was at least one other similar hole on the third floor.

Plaintiff commenced this action, citing numerous violations of statutory provisions and regulations including Labor Law § 240 (1) in his bill of particulars. In June 1995, plaintiff moved for partial summary judgment on the Labor Law § 240 (1) claim, asserting that the defendants had breached their non-delegable duty of furnishing adequate safety devices to protect him from this elevation-related risk. The IAS Court denied the motion and granted summary judgment to defendants, who had not requested it. The court stated that the work being performed by the plaintiff did not involve an elevation-related risk because the worksite was "a floor" and "the work was not elevation-related." It distinguished those cases where the plaintiff had been injured while working on a roof, which it said "is clearly an elevated work site."

Labor Law § 240 (1) imposes absolute liability upon owners and contractors who fail to provide or erect safety devices necessary to give proper protection to a worker who sustains injuries proximately caused by that failure (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513; *Bland v Manocherian*, 66 NY2d 452, 459; *Singh v Barrett*, 192 AD2d 378, 379). The Court of Appeals has stated that the statute is directed at

" 'elevation-related hazards,' " and that " 'injuries resulting from other types of hazards are not compensable under [it] even if proximately caused by the absence of * * * [a] required safety device' " (*Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 490, quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500; *see also, Groves v Land's End Hous. Co.*, 80 NY2d 978, 980). In *Rocovich (supra,* at 514), the Court of Appeals defined the covered risks as "those related to the effects of gravity where protective devices are called for either because of *a difference between the elevation level of the required work and a lower level* or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured" (emphasis added).

Keeping in mind that section 240 (1) " 'is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed'. (See *Quigley* v. *Thatcher,* 207 N. Y. 66, 68.)" (*Koenig v Patrick Constr. Corp.*, 298 NY 313, 319), which is to place the responsibility of safety practices where it belongs—with the owners and contractors (*Rocovich v Consolidated Edison Co., supra,* at 513), we find that the plaintiff's work herein subjected him to an elevation-related risk covered by the statute, and that he suffered injury as a result of defendants' failure to fulfill their statutory duties. Plaintiff, whose attention was focused toward the ceiling at the time he stepped into the uncovered hole, was entitled under the statute to protection "against the known hazards of the occupation" (*Koenig v Patrick Constr. Corp., supra,* at 319), and this he did not receive. Here, the risk of injury existed because of the "difference between the elevation level of the required work" (the third floor), and "a lower level" (the bottom of the piping shaft), and common sense alone tells us that this accident was gravity-related (*Rocovich v Consolidated Edison Co., supra,* at 514). Plaintiff's partial fall through a hole at a construction site can hardly be characterized as only tangentially related to the effects of gravity (*cf., Ross v Curtis-Palmer Hydro-Elec. Co., supra,* at 501; *Limauro v City of N. Y. Dept. of Envtl. Protection,* 202 AD2d 170).

The dissent correctly notes that Labor Law § 240 (1) does not apply merely because work is performed at elevated heights, but rather, applies only where the work itself involves risks related to differences in elevation (*see, Groves v Land's End Hous. Co., supra,* at 980). However, it misapplies this principle in concluding that no elevation-related risk existed because the plaintiff was working on a "permanent concrete floor," and that this accident was no different from a situation where the

plaintiff tripped on a pothole on the ground floor. Indeed, it is the risk posed by elevation differentials at a construction site, not the permanency of the structure, which is determinative of the statute's applicability (*see, Richardson v Matarese*, 206 AD2d 353).

This situation is similar to those where a construction worker was injured by falling through a hole in a roof, which courts have consistently found to be an elevation-related risk within the meaning of Labor Law § 240 (1) (*see, Clark v Fox Meadow Bldrs.*, 214 AD2d 882, 883; *Orcutt v American Linen Supply Co.*, 212 AD2d 979; *Flansburg v Merritt Meridian Constr. Corp.*, 191 AD2d 756; *Linney v Consistory of Bellevue Refm. Church*, 115 AD2d 209). While roof work may appear more elevation-related because a roof is usually the top portion of a structure and is unenclosed, in fact, the risks associated with working on a roof are no greater than those of working on a third floor with large holes in it. This plaintiff did not trip on a pothole, as the dissents suggests, but fell into a hole with a three-foot elevation differential, and such a risk would fall within the statute even if it existed at ground level (*see, De-Long v State St. Assocs.*, 211 AD2d 891; *Nichols v Deer Run Investors*, 204 AD2d 929).

There is no triable issue of fact and, accordingly, plaintiff's motion for partial summary judgment on his Labor Law § 240 (1) claim is granted. Concur—Ellerin, J. P., Nardelli and Mazzarelli, JJ.

Wallach and Tom, JJ., dissent in a memorandum by Tom, J., as follows: I respectfully dissent and vote to affirm the IAS Court, which denied plaintiff's motion for partial summary judgment and, upon a search of the record, granted summary judgment to Tishman Construction Corporation and Crow Construction Co., Inc., dismissing plaintiff's claim for a violation of Labor Law § 240 (1).

This appeal concerns the issue of whether defendants can be held absolutely liable, pursuant to section 240 (1) of the Labor Law, for injuries allegedly sustained by plaintiff on the third floor of the construction site when he stepped into a hole in the finished poured concrete floor on which he was standing while engaged in painting a ceiling.

Plaintiff Bienvenido Carpio was employed by third-party defendant L&L Painting Co., Inc., a painting sub-contractor engaged in a construction project at the United States Post Office Building located at 341 Ninth Avenue, New York, New York. The Post Office owns the building; defendant and third-party plaintiff Tishman was the project manager; and defen-

dant and third-party plaintiff Crow was the general contractor on the job site.

On September 24, 1992, plaintiff was painting the ceiling of the third floor of the building, which he performed by standing on the recently poured concrete floor and utilizing a paint roller attached to a six-foot extension pole in order to reach the ceiling. While proceeding along the floor, plaintiff stepped into a circular "riser" used for electrical or plumbing pipes, which was located in the concrete floor. Plaintiff contends that his right leg entered the hole, that his leg went approximately three feet below the surface of the worksite, and that the hole was uncovered but not visible to anyone looking in its direction.

Plaintiff commenced this action in April 1993 against Tishman and Crow, who subsequently commenced a third-party action against L&L. Plaintiff's verified complaint raises one cause of action asserting that his injuries were caused by the negligence of defendants and seeking $3,000,000 in damages. In the verified bill of particulars, plaintiff asserts that defendants violated various statutes, regulations and rules, including sections 200, 240 (1), (2) and (3), and 241 (6) of the Labor Law. Plaintiff thereafter moved for partial summary judgment against Tishman and Crow on the issue of liability pursuant to Labor Law § 240 (1). In support of his motion, plaintiff maintained that defendants failed to take adequate steps to protect plaintiff from the hazards of an elevated worksite, the third floor, analogizing his situation to the hazards encountered at rooftop worksites.

By decision and order entered November 6, 1995, the IAS Court denied plaintiff's motion and, upon searching the record, granted the non-moving defendants summary judgment, dismissing that branch of the complaint which alleged violations of Labor Law § 240 (1). I agree with that result.

Labor Law § 240 (1), commonly known as the "Scaffolding Law", provides, in pertinent part that: "All contractors and owners * * * in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected *for the performance of such labor*, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." (Emphasis added.)

Historically, the statute has existed in one form or another since 1885 and initially was given an extremely narrow interpretation (*see, Wingert v Krakauer*, 76 App Div 34; *Broderick v*

*Cauldwell-Wingate Co.*, 301 NY 182; *Staples v Town of Amherst*, 146 AD2d 292, 293-294), with the weight of early authority indicating that in order to recover under the statute, a plaintiff must have fallen while using one of the delineated devices or must have been struck by such a device (*Staples v Town of Amherst, supra*, at 294-295; *Wingert v Krakauer, supra*, at 39-40; *Sarnoff v Charles Schad, Inc.*, 22 NY2d 180, 183-185). In recent years, the various Departments have adopted different, and often inconsistent, interpretations of the statute.*

The Court of Appeals, when it has addressed the issue, has made it clear that the purpose of this section is to protect workers by placing the " 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor' (1969 NY Legis Ann, at 470), instead of on the workers, who 'are scarcely in a position to protect themselves from accident' " (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520, quoting *Koenig v Patrick Constr. Corp.*, 298 NY 313, 318; *see also, Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513).

Thus, Labor Law § 240 (1) places absolute liability upon owners, contractors and their agents for any breach of the statutory duty that is the proximate cause of plaintiff's injury (*Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559; *Zimmer v Chemung County Performing Arts, supra*, at 521; *Joyce v Rumsey Realty Corp.*, 17 NY2d 118, 122). The duty imposed is nondelegable and an owner is liable for a violation of the section even though the job was performed by an independent contractor over which it had no supervision or control (*Rocovich v Consolidated Edison Co., supra*, at 513; *Haimes v New York Tel. Co.*, 46 NY2d 132, 136-137).

Despite the absolute liability standard and the liberal interpretation which the statute is to be accorded, the Court of Appeals held in *Rocovich* that Labor Law § 240 (1) was directed only at "risks related to elevation differentials" and, accordingly, injuries resulting from other types of hazards do not fall under the statute, even if proximately caused by the absence of a safety device (*Rocovich v Consolidated Edison Co., supra*, at 514).

While section 240 (1) does not specify the hazards to be averted, it does set forth the protective measures to be used to avoid the contemplated endangerments. The safety devices

---

* For a discussion of the diversity in the case law applying this statute, both inter-departmental and intra-departmental, see *Callovi v Olympia & York Battery Park Co.* (663 F Supp 855) and *Yaeger v New York Tel. Co.* (148 AD2d 308, 312 [Asch, J., dissenting]).

listed in section 240 (1), which are used in tasks related to elevation differentials, give a clear indication that the statute was designed to protect workers against hazards engendered by gravity-related risks that arise from the work being performed.

The Court of Appeals decision in *Misseritti v Mark IV Constr. Co.* (86 NY2d 487) further defines the risks which fall within the purview of section 240 (1). The *Misseritti* Court reiterated that not every hazard, danger or peril encountered in a construction zone connected to the effects of gravity falls within the scope of the statute but, rather, the statute addresses only those risks which are "exceptionally dangerous conditions posed by elevation differentials" (*supra,* at 491; *Mosher v County of Rensselaer*, 232 AD2d 952, 953).

In the matter before us, it cannot be said that a worker, standing unharnessed on a finished, permanent concrete floor while painting a ceiling with an extended roller is working under "exceptionally dangerous conditions", which conditions resulted from differences in elevation. Contrary to plaintiff's contention, Labor Law § 240 (1) does not apply to all situations where work is performed on an "elevated" site, but rather, the task or work itself must involve risks related to elevation differentials. Here, the work in which plaintiff was engaged at the time of injury did not expose him to the hazards associated with elevation. Plaintiff was at no greater gravity-related risk than he would have been on the ground floor, facing the danger of tripping in a pothole. In such a situation, Labor Law § 240 (1) clearly would not be applicable.

In *Ross v Curtis-Palmer Hydro-Elec. Co.* (81 NY2d 494, 501), the Court of Appeals expanded upon *Rocovich* and further defined, and narrowed, the incidents which are compensable under section 240 (1), by stating: "The 'special hazards' to which we referred in *Rocovich*, however, *do not encompass any and all perils that may be connected in some tangential way with the effects of gravity * * *. In other words, Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person*." (Emphasis added and in original.)

Taking plaintiff's allegations to be true, while the hole in the floor may have been negligently left uncovered, this is not one of the gravity-related hazards or perils within the scope of strict liability under Labor Law § 240 (1) (*Yaeger v New York Tel. Co.*, 148 AD2d 308, 312, *supra).* Further, plaintiff does not

identify any of the protective devices enumerated in section 240 (1) that should have been provided to protect him from a type of gravity-related hazard contemplated by the statute.

The fact that plaintiff suffered from the natural effects of gravity as he tripped into the 10 inch by 14 inch opening of a hole does not support the conclusion, under the circumstances of this case, that such fall had the necessary nexus with the type of task being performed (*Groves v Land's End Hous. Co.*, 80 NY2d 978). Since the nature of the fall was unrelated to the nature of the work, it would be unreasonable to impose on the contractor the obligation to have deployed anti-gravity safety devices. To convert such a fall, unrelated to the nature of the work or to the operability of any safety devices, into a basis for liability under Labor Law § 240 (1), on the mere basis that a change in elevation in some manner caused injury due to a fall, departs from the clear statutory phrasing and introduces an essentially open-ended scheme of strict liability that could not reasonably have been envisioned by the Legislature. Under the majority's holding, it would appear that a mere fall by a construction worker into a hole with any measurable elevation, regardless of location at the construction site, would provide a basis to hold the owner or contractor strictly liable under section 240 (1) for any resulting injury.

The majority's analogy of the present case to those cases involving a construction worker falling through a hole in a roof, in which situation Labor Law § 240 (1) might apply, is flawed: plaintiff herein did not fall *through* a hole on the third floor; rather, his foot stepped into a pipe sleeve in the concrete floor and his leg became lodged in the hole.

The majority relies on a reading of several cases to argue that the mere fact of a hole in the floor—which it equates with an "elevation" when measured from the floor level—without additional circumstances invokes the strict liability provisions of Labor Law § 240 (1). I respectfully disagree with the majority's reading of those cases and its application of the principles enunciated therein.

While I agree that this remedial statute must be employed liberally, nevertheless, any such application still must be governed by the legislative purpose to be advanced. The point is to impose on owners and contractors the responsibility to employ properly functioning safety devices when such are required for tasks that "involve[ ] risks related to differences in elevation" (*Groves v Land's End Hous. Co., supra,* at 980).

The majority cites to *Richardson v Matarese* (206 AD2d 353) for the proposition that liability arises from the fact of eleva-

tion differentials, whether permanent or temporary. While I do not disagree that there ought be no distinction arising from the relative transience of the physical structure, the factual context of that case—an entire floor collapsed—led directly to liability under section 240 (1). By implication, insofar as the floor was not properly supported, the floor *in toto* constituted a platform or elevated structure that warranted application of strict liability under section 240 (1). Similar reasoning would apply when a worker falls entirely through a floor or roof to a lower level above which the roof or floor is suspended. Logically, those facts do not compel, or even support, a conclusion that a small pit in an otherwise sound concrete floor converts the floor into the type of elevated location contemplated in the statute.

Possibly in recognition of such, the majority then cites *Limauro v City of N. Y. Dept. of Envtl. Protection* (202 AD2d 170) for the proposition that a "partial fall through a hole at a construction site" directly equates with injuries resulting from the effects of gravity, and hence invokes liability under section 240 (1). However, again, the factual circumstances, and the particular legal principle of that case, upon closer inspection, actually support a different conclusion. In *Limauro*, although the plaintiff fell up to his knee into a hole in the floor, section 240 (1) liability arose, not on that basis, but as a consequence of the *placement* of the movable eight foot high elevated platform, and the three-rung ladder descending therefrom, *directly over* the hole into which plaintiff, upon descending from the bottom rung, stepped. The "elevation-related hazard" was presented by the need to descend from the platform by a means of a ladder, within the contemplation of section 240 (1), rather than by the existence of the hole. The "height differential" that the employer was obliged to help the worker negotiate was measured by the distance from the platform to the floor, and was not defined by reference to the additional distance created by the hole in the floor. The majority cites *Ross v Curtis-Palmer Hydro-Elec. Co.* (81 NY2d 494, *supra)* for a similar proposition, that the presence of a hole posed the potential for a gravity-related injury. That case, though, in which the worker sat on an actual platform to weld seams at the top of a fifty foot shaft, indisputably an "elevated job site" from which or onto which a gravity-related accident could arise, speaks to an entirely different point. The "core objective" of the statute under such circumstances was to prevent the worker from falling off of the platform into the shaft (*supra,* at 501).

The majority also cites *DeLong v State St. Assocs.* (211 AD2d

891) and *Nichols v Deer Run Investors* (204 AD2d 929) in support of the proposition that the differential to be measured is that of the depth of the hole, upon which, in the majority's view, section 240 (1) liability would be predicated even at ground level. However, again, the factual peculiarities of those cases make different points that actually erode the proposition being advanced by the majority. In *Nichols*, the plaintiff was framing a ground floor wall of a house while standing on an icy plank that bridged an excavation ditch varying from five to eight feet deep bordering three sides of the building. The plank, which the Court found to be tantamount to a platform, was the sole means of access to the house and the sole means of performing the task. No safety devices, such as a harness for the momentarily stationary worker, or ropes or encumbrances to impede a fall from the icy plank, had been provided. The risk of a fall from the plank was within the contemplation of the statute. In *DeLong*, the ground-level, but sloped, worksite was immediately bordered by a series of descending terraces that fell away from the building. No safety harness or other protective device was in place to prevent the plaintiff's fall as he painted the building's exterior walls. In each of these cases, the location of the worksite relative to a contiguous drop-off was the elevation-related risk that triggered strict liability under section 240 (1), more akin to working unsecured along the edge of an unfenced roof, which places the question of the remedial purpose of the statute on an entirely different footing from that of a misstep into a 10 inch by 14 inch opening in an otherwise flat and solid foundation.

Injuries arising from a physical condition of the worksite still may be remedied by reliance on alternative provisions of the Labor Law (albeit under a different standard of proof). These provisions include section 200, which codified the common law duty of owners and general contractors to furnish to workers a safe workplace, or section 241 (6), which requires owners and contractors to provide reasonable and adequate protection and safety for workers and to comply with specific safety rules and regulations promulgated by the Commissioner of the Department of Labor. Plaintiff has claimed a violation of both of these sections in his pleadings. To interpret section 240 (1) in the manner urged by the majority, in effect, would cause the provisions of section 240 (1) to be invoked automatically and duplicate the protections provided under sections 200 and 241 (6) of the Labor Law.

Accordingly, I would affirm the order of the Supreme Court, New York County (Diane A. Lebedeff, J.), entered on November

6, 1995, which denied plaintiff's motion for partial summary judgment on the issue of liability against defendants and third-party plaintiffs Tishman and Crow and, upon a search of the record, granted summary judgment to Tishman and Crow dismissing plaintiff's claim of a violation of Labor Law § 240 (1).