OPINION OF THE COURT
Anil C. Singh, J.
Motion sequence Nos. 001 and 002 are consolidated for disposition.
In motion sequence No. 001, plaintiff Donald Brown moves for summary judgment on the issue of liability under Labor Law §§ 240 (1) and 241 (6) pursuant to CPLR 3212. Defendants oppose the motion.
In motion sequence No. 002, defendants 44th Street Development, LLC, and Gotham Construction Company, LLC move for summary judgment dismissing plaintiffs claims alleging violations of Labor Law §§ 200, 240 (1), and 241 (6). Plaintiff opposes the motion.
While this is clearly not the first case in New York jurisprudence involving rebar, it may be the first case to describe the dimension, form and function of this common building material.
Rebar (short for reinforcing bar), also known as reinforcing steel, is a steel bar or mesh of steel wires used as a tension device in reinforced concrete to strengthen and hold the concrete in tension (see Wikipedia, Rebar, http://en.wikipedia.org/wiki/ Rebar). Concrete is a material that is very strong in compression, but relatively weak in tension (see Wikipedia, Reinforced concrete, http://en.wikipedia.org/wiki/Reinforced_concrete). To compensate for this imbalance in concrete’s behavior, rebar is cast into it to carry the tensile loads (id.).
Walking on rebar elevated above ground level would be like walking on a steel tightrope, for garden-variety rebar is no wider than an aerialist’s tightrope.
The material facts in the instant matter are as follows.
*236 Plaintiff Donald Brown is a carpenter who was injured while working on the construction of a building at 550 West 45th Street in Manhattan. Defendant Gotham Construction Company, LLC was the general contractor at the work site.
Construction of the planned 32-story building began in July 2010. A portion of the building was to be a parking garage.
In February or March 2012, the building was either in the final stages of the foundation, or the foundation had just been completed.
To construct the building, rebar was installed on top of plywood forms that were put in place for the pouring of concrete.
When plaintiff arrived at the construction site two weeks before the accident, he was told by his supervisor to work in the basement to close up the walls.
The accident occurred “framing the ramp,” which was for access into the parking garage from street level; the actual parking lot was below grade. A portion of the ramp was open underneath the earth for more parking and a portion was tied into the foundation. In portions that were open underneath the earth, the distance from the ramp to the next level below was more than 10 feet and in some areas was less (but high enough to allow vehicles to pass underneath).
The rebars were in place for the floor concrete pour. The area where the rebars had been put in place was about 15 feet wide by 20 feet long. The rebar was set up in a crisscrossed manner.
On March 2, 2012, plaintiff was carrying lumber to the work area to get ready to cut. He was walking on top of the rebar that had previously been laid down above the plywood forms. He was carrying two pieces of lumber, which were 14 feet long. These were wall studs. He was carrying them on his left shoulder.
Plaintiffs accident occurred when his feet went down through the opening between the rebar. He was walking on top of the rebar because there was nothing else to walk on; there were no planks or anything else laid down to walk on. The only way to get from where he was doing the cutting and other work was to cross over the area with the rebar. As he was walking, his foot slipped down through the rebar down in the hole. The deck was about 12 to 18 inches deep. His left foot slipped off first, and then his right foot slipped. He went down to the bottom about a foot deep. His body twisted, and he went down backwards.
*237 The rebars that he was walking on were approximately 12 inches apart. Each piece of rebar was five-eighths to three-fourths of an inch. They crisscross each other when they are in place. The space that his left foot fell through was about a foot or more wide in all directions.
The supplemental bill of particulars alleges violations of the following statutes, law and rules: Labor Law §§ 240 (1), 241 (6) and 200; part 23 of the Industrial Code (12 NYCRR), including 12 NYCRR 23-1.7, 23-1.8, 23-1.11, 23-1.15, 23-1.16, 23-1.17, 23-1.19, 23-1.20, 23-1.21, 23-1.22, 23-1.23, 23-1.30, 23-1.31, 23-1.32, 23-1.33, 23-2.1, 23-2.2, 23-2.3, 23-2.4, 23-2.6, 23-4.1, 23-4.2, 23-4.4, 23-5.1, and 23-6.1. The supplemental bill of particulars also alleges violations of Occupational Health and Safety Administration (OSHA) regulations 29 CFR 1926.501 (b) (4) (ii) and 1926.451 (b) (2), and American National Standards Institute (ANSI) regulation section 3.1.3.
I. Discussion
The standards for summary judgment are well settled. “The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Despite the sufficiency of the opposing papers, the failure to make such a showing requires denial of the motion (id.).
Summary judgment is a drastic remedy and should only be granted if the moving party has sufficiently established that it is warranted as a matter of law (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).
A summary judgment motion should be denied if the opposing party presents admissible evidence establishing that there is a genuine issue of fact remaining (Zuckerman v City of New York, 49 NY2d 557, 560 [1980]). “In determining whether summary judgment is appropriate, the motion court should draw all reasonable inferences in favor of the nonmoving party and should not pass on issues of credibility” (Garcia v J.C. Duggan, Inc., 180 AD2d 579, 580 [1st Dept 1992], citing Assaf v Ropog Cab Corp., 153 AD2d 520, 521 [1st Dept 1989]). The court’s role is issue-finding, rather than issue-determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]).
II. Liability under the Labor Law § 240 (1) Cause of Action
Labor Law § 240 (1), commonly referred to as the “scaffold law,” provides, in relevant part:
*238 “All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
The First Department summarized the requirements of Labor Law § 240 (1) in Vasquez v Cohen Bros. Realty Corp. (105 AD3d 595 [1st Dept 2013]). The Court wrote:
“An owner or its agent is liable under Labor Law § 240 (1) if the plaintiff was injured while engaged in an activity covered by the statute and [was] exposed to an elevation-related hazard for which no safety device was provided or the device provided was inadequate. The statute requires ‘owners and their agents’ to provide workers with adequate safety devices when they engage in activities such as repairing or altering a building. The purpose of the statute is to protect workers by placing the ultimate responsibility for worksite safety on the owner, and Labor Law § 240 (1) imposes strict liability on the owner for a breach of the statutory duty which has proximately caused injury.” (Vasquez, 105 AD3d at 597 [citations and internal quotation marks omitted].)
The purpose of Labor Law § 240 (1) is to protect workers by placing responsibility for safety practices at construction sites on owners and general contractors, those best suited to bear the responsibility, instead of on the workers, who are not in a position to protect themselves (John v Baharestani, 281 AD2d 114, 117 [1st Dept 2001]).
“In evaluating a claim under Labor Law § 240 (1), the single decisive question is whether plaintiff’s injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential” (Cuentas v Sephora USA, Inc., 102 AD3d 504, 504 [1st Dept 2013] [internal quotation marks and citation omitted]). The statute is to be construed as liberally as may be for *239 the accomplishment of the purpose of protecting workers who are exposed to gravity-related risks (Soriano v St. Mary’s Indian Orthodox Church of Rockland, Inc., 118 AD3d 524, 526 [1st Dept 2014]). The decisive question as to whether the statute applies to a particular accident is whether plaintiff’s injuries were the direct consequence of a failure to provide adequate protection against harm directly flowing from the application of the force of gravity to an object or person (Arnaud v 140 Edgecomb LLC, 83 AD3d 507, 508 [1st Dept 2011]).
A worker injured by a fall from an elevated work site must generally prove that the absence of or defect in a safety device was the proximate cause of his injuries (Felker v Corning Inc., 90 NY2d 219, 224 [1997]). When the circumstances of a worker’s task create a risk related to an elevation differential, a basis for the imposition of liability under Labor Law § 240 (1) is established (Cruz v Turner Constr. Co., 279 AD2d 322, 322 [1st Dept 2001]).
Plaintiff exhibits the sworn affidavit of Scott M. Silberman, a professional engineer. Mr. Silberman contended that the defendants failed to provide a proper temporary walking surface to plaintiff to enable him to walk on top of the rebars in the course of his work. According to Mr. Silberman, the failure to provide a proper temporary walking surface was a departure from good and accepted practices regarding construction safety, as well as a violation of codes, rules and regulations.
Mr. Silberman stated that defendants should have provided plaintiff with a planked or plywood walking surface to safely walk upon the rebar matting to prevent him from falling into the holes between the bars. Such planking or plywood would have provided a wide and stable surface for him to walk on. Silberman pointed out that the rebars were round in shape, small in diameter and coated with paint, all of which made slipping very likely. He emphasized that a wide and flat working surface should have been provided in this instance.
Mr. Silberman noted that, as per the definitions in OSHA and the New York State Industrial Code, a scaffold is defined as a temporary elevated working platform and its supporting structure, including all components. Further, he contended that planks on the rebar would be considered the functional equivalent of a scaffold. Section 1926.451 (b) (2) of OSHA requires a minimum 18-inch-wide walking surface. Specifically, that section provides that “each scaffold platform and walkway shall be at least 18 inches (46 cm) wide” (29 CFR 1926.451 [b] [2]).
*240 Mr. Silberman noted that plaintiff testified that each piece of rebar was approximately five-eighths to three-fourths of an inch. He pointed out that most rebar is less than one inch in diameter, which is significantly less than the 18-inch-wide walking surface required. Moreover, the rebar is round, so technically the amount of “flat” walking surface available to plaintiff was close to zero inches.
Silberman stated that sections 23-1.7 (b) (1) (i) and 23-5.1 (e) (5) of the Industrial Code were violated as there was no cover and the width of the rebar was well below 18 inches. He opined that there was a violation of Labor Law § 240 (1) in that a proper walking surface was not provided to plaintiff, which resulted in him falling a distance through the opening in the laid rebars. He contends that plaintiffs fall was directly caused by the failure to provide a proper walking surface and his injuries were the direct result of gravity. According to Silberman, had plaintiff been provided with a wider and flatter surface to walk upon and/or with proper safety devices, he would not have fallen into the hole created by the rebar matting. Finally, he opined that plaintiffs accident and injuries were proximately caused by the violations cited above and the failure to provide a safe workplace.
The facts of the instant matter are analogous to Gottstine v Dunlop Tire Corp. (272 AD2d 863 [4th Dept 2000]).
The plaintiff in Gottstine was injured at a work site owned by the defendant. While constructing a foundation for the installation of a tire press, he was required to walk over a rebar mat approximately 18 inches above the bottom of a pit two feet deep, 14 feet wide and 16 feet long. There was a second level of rebar mat four inches above the bottom of the pit. The mats were constructed in a “checkerboard” design covering the pit. Plaintiff was required to carry heavy metal leveling plates to the location where they would be installed. While carrying a plate, his foot slipped and his leg went through a 12-inch by 12-inch opening in the mats. The plate struck plaintiffs knee, causing injury. The Fourth Department found that the rebar mat was an elevated work site within the meaning of Labor Law § 240 (1).
The First Department addressed the extent to which Labor Law § 240 (1) applies to elevation-related accidents in Campisi v Epos Contr. Corp. (299 AD2d 4 [1st Dept 2002]). The plaintiff was a superintendent of construction for the City of New York who was injured while at work monitoring the progress of *241 contractors working pursuant to a contract with the City to convert a City-owned brownstone into a six-family house. After passing through the threshold at the building entrance, he stepped into a space between two joists in flooring, fell through the gap as far as his elbows, and ended up dangling between the first floor and the basement. The Court held that, since plaintiff was employed in an activity covered by Labor Law § 240 (1), his fall through temporary flooring was an elevation-related incident. Accordingly, he had established the necessary predicate for liability under the statute.
The opinion of the trial court in Figueiredo v New Palace Painters Supply Co., Inc. (13 Misc 3d 1229[A], 2006 NY Slip Op 52058[U] [Sup Ct, Bronx County 2006]) is also instructive. The deceased plaintiff was engaged in the renovation/ demolition of a building at the direction of defendants owner and general contractor. Plaintiff and another worker fell from an unsecured piece of plywood that had been laid over beams. The platform shifted and fell between the two beams, causing plaintiff to fall through the gap between these beams to the floor below.
The court held that, under the circumstances, plaintiff had established that the deceased plaintiff’s fatal injuries were proximately caused by the failure of a safety device to afford him protection from an elevation-related risk. The court reached its holding based on analysis of legal precedent in the First Department, writing:
“It is the view of the First Department that a fall from a flat surface to a level below constitutes ipso facto a gravity-related accident within the purview of Labor Law § 240 (1), irrespective of the specific task that was being performed at the time of the accident. It reasons that the work itself involved tasks related to difference in elevation whenever there is a change in elevation from one part of the site to another. This view was first expressed in the seminal case of Carpio v Tishman Const. Corp., 240 AD2d 234 (1st Dept. 1997), where the court confronted the issue of whether falling from a flat surface on the third floor of a building to a level below is the type of injury that Labor Law § 240 (1) was intended to prevent. In Carpio, the plaintiff was employed as a painter on a project at a United States post office facility. His appointed task required that he walk along a concrete floor while *242 painting the ceiling with a roller. While he was focused overhead, he stumbled backward into a hole in the floor, dropping three feet below the surface, up to his groin. The hole, known as a riser or a sleeve, was approximately a foot wide and was uncovered to allow piping to be extended to the floor below. Partial summary judgment on liability was granted to the plaintiff. The Carpió Court held that the plaintiff was a protected person pursuant to Labor Law § 240 (1), because the work itself involved risks related to differences in elevation. As the Carpió Court explained, there existed a risk of injury because of the difference in elevation between the level where the work was required (the third floor) and a lower level (the bottom of the piping shaft).” (2006 NY Slip Op 52058[U], *3-4.)
The Figueiredo court’s observations are indeed accurate. The First and Second Departments have consistently held where a construction worker is injured as the result of the collapse of flooring or a hole in flooring, a Labor Law § 240 (1) cause of action is stated, and, in the absence of a factual dispute, summary judgment is appropriately awarded to the plaintiff (see Serpe v Eyris Prods., 243 AD2d 375 [1st Dept 1997] [painter fell into unsecured staircase]; Carpio v Tishman Constr. Corp. of N.Y., 240 AD2d 234 [1st Dept 1997] [painter fell into unprotected hole]; Robertti v Powers Chang, 227 AD2d 542 [2d Dept 1996] [plaintiff fell through hole caused by collapse of corrugated metal decking]).
Defendant points out that plaintiff fell only about one foot into the hole between the rebar. However, it is an oversimplification to suggest that Labor Law § 240 (1) does not apply based solely on the distance involved.
For example, in Amo v Little Rapids Corp. (301 AD2d 698 [3d Dept 2003]), plaintiff was standing on top of a rock or boulder jackhammering it in order to break it down and remove it from an area under excavation in a section of a basement floor in a factory. Plaintiff fell from the boulder, sustaining injuries. The defendants asserted that the jury’s factual determination that plaintiff fell 15 to 16 inches rendered Labor Law § 240 (1) inapplicable as a matter of law. The Third Department disagreed, writing:
“The sufficiency of an elevation differential and fall from a height for purposes of Labor Law § 240 (1) liability cannot, unfortunately, be reduced to a nu *243 merical bright-line test or automatic minimum/ maximum quantification and, indeed, . . . the extent of the elevation differential may not, by itself, necessarily determine whether section 240 (1) applies. On one side of the spectrum, de minimis elevations involving falls at or very near ground level are insufficient. On the other end of the spectrum, otherwise qualifying falls of several feet have been determined to be sufficiently elevated so as to fit within the intended protective scope of Labor Law § 240 (1).
“This case, involving an otherwise qualifying elevation differential of 15 to 16 inches, represents a middle ground, of sorts, in reported Labor Law § 240 (1) jurisprudence and we find support for Supreme Court’s conclusion that, considering all of the circumstances of this accident, this height was sufficient to present the type of elevation-related hazard protected by this statute.” (Amo, 301 AD2d at 701-702 [citations omitted].)
The First Department reached a similar conclusion in Megna v Tishman Constr. Corp. of Manhattan (306 AD2d 163 [1st Dept 2003]). In Megna, plaintiff, an elevator helper at a construction site, was injured when a temporary two-step wooden staircase leading to a temporary wooden landing collapsed under his weight and he fell to the ground. The Court held that, as the temporary stairway was being used to facilitate plaintiff’s access to a different elevation level, and therefore indisputably an elevation device within the meaning of Labor Law § 240 (1), the shortness of the distance of plaintiff’s fall — at least two feet according to plaintiff, no more than 16 inches according to defendants — was irrelevant.
Defendant relies on four cases to show that stepping into an unguarded opening does not always give rise to a Labor Law § 240 (1) cause of action: Piccuillo v Bank of N.Y. Co. (277 AD2d 93 [1st Dept 2000]); Alvia v Teman Elec. Contr. (287 AD2d 421 [2d Dept 2001]); Miller v Weeden (7 AD3d 684 [2d Dept 2004]); and Avila v Plaza Constr. Corp. (73 AD3d 670 [2d Dept 2010]).
The injured plaintiff in Piccuillo was an electrician who fell after stepping into a hand-hole, an approximately 12-inch-wide by 8-inch-deep opening used by electricians to provide access to wiring and ducts embedded in floors. Deposition testimony established that when hand-holes are not in use, they are covered by metal plates secured with screws and that on a *244 construction site, electricians are ordinarily the only workers that open and re-cover them. The First Department held that plaintiff’s fall was not caused by defendants’ failure to provide or erect necessary safety devices in response to “elevation-related hazards,” and, accordingly, the protections of Labor Law § 240 (1) did not apply.
By contrast, plaintiff’s expert in the instant matter, Scott Silberman, testified that plaintiff’s accident was caused by defendants’ failure to provide a safety device. Specifically, the expert testified that defendants should have provided planking for plaintiff to walk on. Piccuillo is, therefore, distinguishable.
The injured plaintiff in Alvia was a worker carrying sheets of plywood. He was walking on the permanent concrete floor. There were rectangular holes in the floor for heating, ventilation and air conditioning. Plaintiff tripped on a piece of plywood that was approximately 16 inches wide by 16 inches long by five-eighths of an inch thick, which was lying on the floor. Plaintiffs left leg fell into an approximately 12-inch by 16-inch hole in the floor. There was no covering over the hole, and no barricade around it. The Second Department held that the cause of action based on Labor Law § 240 (1) was properly dismissed. The Court reasoned that a hole of such dimensions did not present an elevation-related hazard, but represented the “type of ordinary and usual peril a worker is commonly exposed to at a construction site” (Alvia, 287 AD2d at 422).
Alvia is distinguishable in a fundamental respect. The hole in Alvia was in the permanent concrete floor. By contrast, no floor existed in the instant matter. Contrary to defendants’ contention, the instant matter is more akin to Robertti v Powers Chang (227 AD2d 542 [2d Dept 1996]), where plaintiff was carrying a heavy beam across a temporary floor made of plywood pathways laid over overlapping corrugated metal decking sheets, on top of which a permanent concrete floor was to be poured. The Robertti court held that the case involved an elevation-related risk covered by Labor Law § 240 (1) even though the plaintiff did not fall completely through to the floor below. The Court wrote, “Regardless of the height from which the plaintiff fell, the fall itself was allegedly caused by the inadequacy of the flooring which allegedly failed to provide the plaintiff the proper support and protection to which he was entitled” (Robertti, 227 AD2d at 543).
The plaintiff in Miller was injured at a ground-level work site when he stepped into an uncovered septic pump hole two *245 feet wide by three feet deep. The Second Department held that the trial court properly dismissed plaintiff’s Labor Law § 240 (1) cause of action, holding that the protective devices required under the statute were inapplicable because the work site was at ground level.
In short, Miller is clearly distinguishable, for plaintiff in the instant action was working at an elevation.
The plaintiff in Avila was injured while standing on top of a rebar grid suspended over a dirt floor. When the plaintiff disconnected two sections of hose, concrete inside of the section he was holding suddenly shifted, and an iron clamp recoiled and hit him in the head, causing him to lose his balance and fall down. When the plaintiff fell, his body landed on the rebar, but his right leg fell approximately three feet down into one of the openings in the rebar grid, and he fractured his leg.
The Second Department dismissed plaintiff’s cause of action alleging a violation of Labor Law § 240 (1), holding that the openings of the grid, which were clearly not of a dimension that would have permitted the plaintiff’s body to fall through and land on the dirt floor below, did not present an elevation-related hazard.
The Second Department’s decision in Avila contradicts the Fourth Department’s decision in Gottstine. We view the latter case as the better approach.
To recapitulate, we find that the work plaintiff was performing when the accident occurred falls squarely within the protection of Labor Law § 240 (1). Plaintiff was walking on rebar that was elevated above the concrete form for the parking ramp, and defendants failed to provide him with an adequate safety device — specifically, planks to walk on. It is undisputed that defendants did not supply the workers with planks.
Based on the analysis set forth in Gottstine v Dunlop Tire Corp., this court finds that plaintiff in the instant matter was at an elevated work site within the meaning of the statute. The record reflects that the rebar was not flush with the ground. Rather, it was suspended at least one foot above ground level. Had the rebar been flush with the surface of the earth, plaintiff would have fallen a negligible distance. Slipping off the rebar would have been inconsequential.
For the above reasons, the court finds that plaintiff is entitled to an award of summary judgment on the issue of liability under Labor Law § 240 (1).
*246 III. Liability under Labor Law §§ 241 (6) and 200
Labor Law § 241 (6) provides in pertinent part as follows:
“All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.”
In short, there is no liability under Labor Law § 241 (6) where a plaintiff trips and falls on rebar steel that is an integral part of the ongoing work being performed. For example, in Tucker v Tishman Constr. Corp. of N.Y. (36 AD3d 417, 417 [1st Dept 2007]), the First Department affirmed the dismissal of a cause of action under Labor Law § 241 (6), holding that since rebar steel over which plaintiff tripped was an integral part of the work being performed, not debris, scattered tools and materials, or a sharp projection, there was no liability under the Industrial Code. Likewise, the First Department dismissed a Labor Law § 241 (6) claim in Flynn v 835 6th Ave. Master L.P. (107 AD3d 614, 614-615 [1st Dept 2013]), based on plaintiff’s testimony showing that the rebar that allegedly caused him to fall was in the process of being installed and, thus, integral to the ongoing work, defeating his claim of a violation of the Industrial Code. There is no dispute here that the rebar plaintiff slipped from was integral to the work. Therefore, the Labor Law § 241 (6) claim is dismissed.
Finally, we turn to plaintiff’s claim under Labor Law § 200 (1).
Labor Law § 200 (1) provides in pertinent part as follows:
“All places to which the chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.”
*247 This section is a codification of the common-law duty imposed upon an owner or general contractor to provide a safe place to work (see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 352 [1998]).
The issue in Bombero v NAB Constr. Corp. (10 AD3d 170, 171 [1st Dept 2004]) was whether the plaintiff had a cause of action pursuant to Labor Law § 200 against the general contractor on a subway reconstruction project for the personal injuries sustained in the course of his employment as a senior inspector of concrete and steel construction on the project.
At the trial, plaintiff testified that one of his primary duties was to inspect the installation of rebar. In order to take accurate measurements and to inspect the placement of the rebar properly, plaintiff testified that he was sometimes required to traverse the rebar since the wooden planking placed across the exposed rebar was approximately three to four feet wide and the platform area to be inspected was between 14 and 25 feet wide. Likewise, plaintiff’s own expert conceded that part of plaintiff’s job as an inspector would require him to traverse the exposed rebar. On the day of the incident, plaintiff testified that although he saw that the planking had been removed by the general contractor on the project and that planking could have been easily replaced, and although he knew traversing the exposed rebar posed a danger, he decided to walk across the rebar, causing him to lose his footing and to sustain an injury to his right knee.
The First Department held that plaintiff had no cause of action pursuant to Labor Law § 200. The Court reasoned that, under the circumstances, the defendant owed no duty to plaintiff as a matter of law, for the alleged hazard was an inherent part of plaintiff’s employment and was open, obvious and readily observable by plaintiff.
For the most part, the facts of the instant action are analogous to Bombero. Accordingly, we find that there cannot be liability under Labor Law § 200 (1).
Accordingly, it is ordered that plaintiff’s motion for summary judgment is granted to the extent that plaintiff is awarded summary judgment on the issue of liability under Labor Law § 240 (1); and it is further ordered that defendants’ motion for summary judgment is granted to the extent that plaintiff’s causes of action alleging violations of Labor Law §§ 200 and 241 (6) are dismissed.